THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE NURSE, Defendant-Appellant.

(No. 61021;

First District (3rd Division)—November 6, 1975.

James J. Doherty, Public Defender, of Chicago (William D. Trude and Marilyn D. Israel, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Bertina E. Lampkin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, George Nurse, was charged with four counts of armed robbery and one count of unlawful use of weapons. After a bench trial defendant was found guilty of three counts of armed robbery and was sentenced to a term of 5 to 15 years on each charge, the sentences to run concurrently. He was also convicted of the unlawful use of weapons charge and sentenced to a term of 1 to 3 years, that sentence also to run concurrently. However, the State agrees with defendant that this latter charge arose out of the same acts as did the greater offenses of armed robbery. The trial court may not enter judgment on more than one offense arising from the same transaction. (*People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E.2d 1.) Accordingly, the judgment of conviction as to the unlawful use of weapons charge is reversed.

Defendant's remaining contentions on appeal are that he was not proved guilty of armed robbery beyond a reasonable doubt; that certain comments of the trial judge indicated a preconceived attitude regarding defendant's guilt and denied him a fair trial; that the court committed reversible error in excluding certain testimony; and that the sentences were excessive.

On May 7, 1973, at approximately 9:55 p.m., two armed men robbed several employees of a restaurant located in the Village of Wilmette. The men entered the premises through an unlocked side door. One of the men, Eddie Gibson, was dressed as a woman and armed with a .38-caliber revolver. The other man, the defendant, was armed with a 12-gauge shotgun and had a stocking over his head. Gibson (not involved in this appeal) entered a plea of guilty to the charges and was sentenced to prison. Defendant admits to being present, armed and masked, but maintains that he acted under the compulsion of Gibson. In his testimony at trial, Gibson supported defendant's contention that he compelled defendant to participate in the robberies.

The pertinent evidence relating to the defense of compulsion is as follows. Both defendant and Gibson testified that approximately one-half hour before the robbery, defendant was returning to his home in Evanston. When it began to rain, defendant attempted to hitch a ride.

Gibson, dressed as a woman, drove up and told defendant to get in the car. When defendant entered the vehicle, he was within three blocks of his home. Although Gibson immediately recognized defendant as an old acquaintance, defendant at that time believed the driver to be a woman. Defendant and Gibson had been acquainted with each other since 1965 when they attended the same junior high school together.

Thereafter, Gibson displayed a revolver, stated that he wanted money, and indicated that defendant was going to help him obtain it. While defendant testified that Gibson immediately drew the revolver, Gibson testified that he did not exhibit the weapon until they had been driving about 10 minutes. While Gibson testified that he did not divulge his plan of robbery until they reached the restaurant, defendant stated that he was informed of Gibson's intentions in transit.

When they reached the restaurant, Gibson drove behind it into an alley. He told defendant to remove an unloaded shotgun from under the seat and to get out of the vehicle. He then instructed defendant to enter the side door with him and to stand by the door acting as though he were participating in the robbery. Before entry, Gibson gave defendant a stocking to place over his head. Gibson testified that he made defendant enter the restaurant before him, but defendant related that he entered a few seconds after Gibson under the latter's threat to kill all the employees. A witness for the State, Linda Nelson, testified that she saw Gibson enter the restaurant alone and did not notice defendant in the corner of the room until about two minutes later.

The employees were herded to the back of the restaurant at gunpoint and lined up against the wall with their hands behind their necks. As Gibson ordered everyone into the washroom, defendant testified that he cracked the side door to escape, and observed a police car outside. His attempt to escape was thwarted when Gibson yelled at him to enter the washroom himself. Gibson, however, denied that he had prevented defendant from trying to escape, but had merely warned defendant that it would be suicide to attempt to leave the premises while the police were outside.

When the police were discovered, Gibson removed his wig. Defendant testified that it was only then that he recognized Gibson as an old acquaintance. When defendant entered the washroom, he told the employees to stay calm because Gibson was "crazy," "a nut" and "dangerous." He also told the employees that he had been picked up by Gibson while hitchhiking and had been forced into participating in the robbery. Defendant also told the employees that his gun was unloaded, and at least for a while placed the gun on the floor within a foot of one of the employees. The employees supported this testimony of defendant,

but did not corroborate his statement that he broke the gun open to show that it was unloaded.

Upon learning of the police presence, Gibson held the gun to a female hostage's head and negotiated with the police. He insisted upon defendant's release asserting that he had compelled him to participate at gunpoint. The police agreed to the release of defendant and instructed defendant to call Gibson when safe. Defendant drove Gibson's vehicle to his own home and made the telephone call. He talked to both Gibson and a police officer and testified that the officer told him to remain at home until the police came. He testified that he gave his name and address to the police before he departed. Defendant remained at his home until the next day when the police kicked down his door and arrested him. He was found kneeling in his closet and said that he had not heard the knock at the door.

Officer Carlos Mitchum of the Evanston police department testified that he was called to the scene on the evening in question. He negotiated defendant's release with Gibson. Officer Mitchum denied that defendant had given his name and address to the police before he departed, and he also denied advising defendant to stay at home until he was contacted by the police. Officer Mitchum also testified that he saw Gibson take shells out of both the revolver and the shotgun. Mitchum further testified that in a 60-day period prior to the robbery in question he had seen Gibson and defendant in an Evanston pool hall at the same time about 10 or 12 times.

Two employees of the restaurant, Linda Nelson and Joan Carew, testified that they heard defendant address Gibson by his nickname "Bo," after the latter had taken off his wig. Miss Nelson further testified that the two men had conversations although she could not remember any specifics. Defendant and Gibson denied any use of the word "Bo" by defendant.

■■ Defendant's principal contention is that he was not proved guilty of armed robbery beyond a reasonable doubt in that he was compelled to participate in the crime under fear of death or great bodily harm. The pertinent statute provides as follows:

"(a) A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct." (Ill. Rev. Stat. 1973, ch. 38, par. 7—11.)

Compulsion is an affirmative defense (Ill. Rev. Stat. 1973, ch. 38, par. 7—14) and, therefore, once properly raised by some evidence by the

defendant, the State must overcome it by proof beyond a reasonable doubt to sustain a conviction. Ill. Rev. Stat. 1973, ch. 38, par. 3—2.

The testimony of defendant and Gibson as to compulsion was sufficient to raise this defense under the statute. Thus to support a finding of guilty the State had to prove beyond a reasonable doubt that defendant had not been compelled to act as he did. In our view, the State successfully met its burden.

Officer Mitchum testified that the shotgun which defendant carried throughout the robbery was loaded with one shell. Had Gibson been compelling a hesitant captive, he would not have presented him with a loaded gun. The officer's testimony was further damaging concerning the release of the defendant. Contrary to the assertions of the defendant, the officer testified that he had not been given defendant's name and address either when he left the restaurant or when he telephoned. The officer also stated that he did not tell defendant to remain at home until the police came. Had defendant truly been an innocent victim, his logical response would have been to call or drive to a police station to clear himself. Moreover, to make the arrest, the police officers were compelled to knock down the door of defendant's home and eventually found him kneeling in a closet.

Evidence of a familiarity between defendant and Gibson at the scene of the robbery was introduced which went beyond the fact that the two were old acquaintances and former classmates. According to one State witness, the two engaged in conversations during the robbery. Two witnesses testified that defendant had addressed Gibson by his nickname "Bo." Further, Gibson trusted defendant in that he entered the restaurant alone followed shortly thereafter by defendant who was armed with a loaded shotgun.

The court had additional justification for rejecting the defense of compulsion in that the testimony of Gibson and defendant was both contradictory and unrealistic. Defendant testified that Gibson pulled the gun immediately after he entered the vehicle. Gibson testified that he exhibited the weapon 10 minutes later. When this discrepancy is coupled with the fact that defendant lived only three blocks from where he was picked up, within 10 minutes the vehicle would have been far past the defendant's home. Additionally, the underlying premise of the chance meeting itself is suspect since it is questionable whether a man would attempt to hitchhike when only a few blocks from home.

The issue of compulsion is a question of fact which the trial judge must resolve. It is he who determines the credibility of witnesses and weighs their testimony. This determination is a matter peculiarly for the trier of fact alone and it is not for a reviewing court to substitute its

opinion therefore. (*People v. Woods* (1963), 26 Ill.2d 582, 187 N.E.2d 692; *People v. Smith* (1974), 25 Ill.App.3d 155, 323 N.E.2d 100.) As a result, this court will not set aside such a judgment unless the proof is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt. (*People v. Graham* (1971), 2 Ill.App.3d 1022, 279 N.E.2d 41.) No such doubt exists in this case. Defendant was proved guilty beyond a reasonable doubt.

Defendant's second contention is that he was denied a fair trial since the judge exhibited a predisposition regarding his guilt prior to the close of the evidence. This argument is based upon a remark made by the judge during the prosecutor's questioning of Officer Mitchum. The officer stated that he had observed defendant and Gibson in a pool hall at the same time. Defense counsel objected that no foundation had been established and that until this was done the questioning on this point could not proceed. The judge overruled the objection but advised the prosecutor to establish a time frame for the encounter. The prosecutor asked another question without reference to time and defense counsel lodged the same objection. Into this mounting confusion the trial judge interjected the following comment:

> "THE COURT: He says he will establish time, May 7. Now I think, bring it * * *."

Defendant maintains that the comment evidences the judge's belief that defendant and Gibson were together in the pool hall on the day of the robbery, and had therefore planned the robbery together.

■■ Reversible error is only committed where statements indicating prejudice by the trial court are shown. (*People v. Sparks* (1972), 9 Ill. App.3d 470, 292 N.E.2d 447.) Defendant also has to show that he had in some way been harmed by the remarks of the judge. (*People v. Faginkrantz* (1960), 21 Ill.2d 75, 171 N.E.2d 5.) The statement by the judge in the present case was a mere clarification intended to expedite the questioning of the witness and to elicit a time frame. The trial judge clearly was attempting to inform the prosecutor of the deficiency in his questioning and at the same time assure the defense that the court would insist upon time being established. No evidence of prejudice can be inferred from the remarks of the judge. In viewing this specific comment as well as the entire record, we find no evidence that the judge harbored a preconceived notion as to defendant's guilt.

■■ Defendant next contends that the trial court committed reversible error in ruling that the defense could not cross-examine Officer Mitchum regarding statements made to him by Gibson on the grounds that it would elicit inadmissible hearsay testimony. It is not necessary for this court to determine whether the officer's testimony would have been

hearsay. The exclusion of this testimony could result in no more than harmless error as its content was substantially introduced through other evidence. The defense called Gibson to relate his own statements made to Officer Mitchum and this testimony stood unchallenged by the State. As such, no prejudice to the defendant could have resulted. It has long been established that the rejection of evidence is not prejudicial, if substantially the same evidence is admitted at some stage of the trial. *People v. Moretti* (1955), 6 Ill.2d 494, 129 N.E.2d 709.

■■ Defendant finally contends that the three concurrent sentences of 5 to 15 years are excessive and should be reduced by this court. While this court has the authority to reduce sentences, the Supreme Court has cautioned that the power should be exercised with care and circumspection. (*People v. Fox* (1971), 48 Ill.2d 239, 269 N.E.2d 720.) While the defendant is only 25 years old and had no prior criminal record, the serious nature of this armed robbery does not warrant a reduction in sentence.

Accordingly, the judgment of the circuit court of Cook County as to the convictions for the armed robbery is affirmed. The judgment as to the unlawful possession of weapons charge is reversed.

Affirmed in part; reversed in part.

McGLOON, P. J., and DEMPSEY, J., concur.