THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VINCENT LAMAR THOMAS, Defendant-Appellant.

Third District   No. 74-344

Opinion filed January 30, 1976.—Modified upon denial of rehearing March 31, 1976.

Earl L. Washington, of Chicago, for appellant.

Edward Drolet, State's Attorney, of Kankakee (F. Stewart Merdian, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court as modified upon denial of petition for rehearing:

Vincent Lamar Thomas appeals from a conviction of armed robbery in the Circuit Court of Kankakee County following a jury trial. Defendant was indicted for burglary and five counts of armed robbery, as a result of an incident in which two men robbed the occupants in the home of Allen Brannock in Kankakee. The trial court withdrew the burglary charge from the jury during its deliberations, and the jury thereafter returned with guilty verdicts on all five counts of armed robbery. Judgment of conviction was entered on the verdicts and a sentence of from 10 to 20 years was imposed on defendant Thomas.

On appeal in this court, defendant argues (1) that he was not proven guilty beyond a reasonable doubt; (2) that it was error for the court to finish the trial and impose sentence in his absence; (3) that the court erred in withdrawing the burglary count during the jury deliberations; and (4) that it was error for the court to enter judgment of conviction on more than one count of armed robbery. From the record it appears that two men wearing ski masks approached Allen Brannock, Jr., while he was working in the garage behind his home and asked him what time it was. After Brannock had glanced at his watch and looked up, he observed that two guns were pointed at him. The robbers took his wallet and watch and searched his pockets. They also struck Brannock when he asked the men to return his driver's license.

The robbers then escorted the young man at gunpoint to the back door of his home and one of the men entered and announced a holdup. The senior Brannocks, their daughter Lois, Brannock, Jr., and two young friends, Lionel Surprenant and Jimmy Wisniewski, were all forced to lie on the floor where they were searched and also while the robbers were searching the house. Apparently one of the robbers did the searching and collecting while the other stayed near the door and accumulated the stolen articles. At one point, the man, who was in the house, kicked Mr. Brannock, Sr., in the head and another time he held a gun near Mrs. Brannock's

head and threatened to kill her if Mr. Brannock would not tell where the guns in the house were kept.

When the robbers left with their loot, the Brannocks immediately phoned the police. Within 15 minutes, Officers Palmer and Freigo were in the area in a squad car and saw a black male running across the street and into an alley. He was wearing plaid pants, a brown leather jacket, and ski cap. The officers followed him into the alley and turned on their spotlight, which struck the man in the face and enabled Officer Palmer to identify him as the defendant with whom Palmer was familiar. Palmer saw Thomas throw some objects to the ground as he started running away. Officer Freigo took up the chase on foot. A few minutes later, Sergeant Chaney (helping in the search nearby) located a black male in a leather jacket and plaid pants, hatless, coming out on the sidewalk from behind a church. The man appeared nervous and out of breath. Chaney approached and asked for some identification, and the man produced a driver's license with defendant's name on it. A few minutes later Officer Palmer drove up and identified Thomas as the man he had just seen in the alley.

The police searched the alley where Thomas was seen to throw down some objects and they found Mrs. Brannock's purse and a nickel-plated gun, later identified by the victims as looking similar to the one used in the robbery. In another alley nearby they found Mrs. Brannock's wallet and a pair of pants in which the wallet was located when the pants were stolen. Also nearby they found three other wallets taken from the victims, and, also, a ski cap. When defendant Thomas was searched, a Timex watch was found in his pocket which was later identified by Allen Brannock, Jr., as the one stolen from him. Thomas was also wearing a wristwatch at the time he was searched. All the victims testified they could tell the robber was a black man by looking through the holes in the ski mask. They all described the robber as wearing a dark leather jacket and a pair of light colored pants with dark stripes with some sort of plaid or checked pattern.

Defendant did not take the stand and presented no evidence, and, in fact, was not present when the prosecution finished its case in chief.

On appeal in this court, defendant argues that the evidence was circumstantial and insufficient to prove him guilty beyond a reasonable doubt. He points particularly to the fact that no one was able to make an exact identification of the gun, and that young Allen Brannock could not make an exact identification of his watch. It was also contended that the descriptions of the pants worn by the robber were in some conflict with each other and with the pants worn by defendant when he was apprehended shortly after the robbery. The testimony as to the similarity of the gun is evidence to be considered by the jury and it is not likely that any victims

would be able to identify the precise gun used in any event. The descriptions of the pants worn by the robber are not so much at odds as to raise any serious doubt. It is clear from the record that the robber was wearing a pair of white or cream colored pants with dark stripes, apparently both horizontal and vertical, in a plaid or checked pattern. The testimony given by the witnesses is consistent, and the conflicts are too minor to constitute a defect in the chain of proof which led to the conviction of defendant. The fact that young Brannock could not identify the watch found in defendant's pocket, except to say that it was similar to Brannock's, was understandable since a great number of such watches are marketed. The watch found in Thomas' possession was the same make and model and the band was the same. The band even had green specks on it which Brannock identified and attributed to a recent painting job he had done. The facts to which we have referred together with the finding of money as apparent proceeds from the robbery near the area where defendant was seen just after the incident, are sufficient to support the conviction.

■■■ As stated in *People v. Marino* (1970), 44 Ill. 2d 562, 580, 256 N.E.2d 770:

> "[A] conviction may be sustained upon circumstantial evidence as well as direct evidence, (*People v. Russell*, 17 Ill. 2d 328,) it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Magnafichi*, 9 Ill. 2d 169; *People v. Grizzel*, 382 Ill. 11.) The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt."

The evidence in the cause before us meets the standards set out by the Supreme Court in the *Marino* case.

Defendant also argues that the court erred in continuing the trial in his absence and in later sentencing him when he was still absent. The record shows that in the second day of the trial, with two State witnesses having already testified, a recess was called at 11 a.m. because defendant was complaining of a headache and an upset stomach. He was taken to a hospital and examined. His counsel subsequently suggested that he spend the remainder of the lunch break resting at home. Thomas did not return for the afternoon session, however, and his grandfather called to say he was ill. A deputy sheriff and the prosecutor both told the court that they had seen defendant walking around after the recess before he went home and they both thought he looked and acted perfectly healthy. The court then told counsel for Thomas to attempt to get the defendant to court. Not

long afterward, the defendant did show up and was admonished by the court for his absence.

Six more witnesses, the remaining victims, and Officers Palmer and Chaney, testified before court adjourned for the day. The next day on May 15, 1974, defendant had not appeared by 10:30 a.m., an hour after the court had reconvened. Defendant's grandfather came in and said he could not find Thomas nor did he know where he was. The court ordered a writ of attachment, canceled defendant's bond, told the jury there had been an unexpected development and adjourned the case for 8 days. On the following day, May 16, 1974, the court informed defense counsel that the trial would be required to proceed on May 23, 1974, with or without defendant's presence. On May 23, the court denied a motion for continuance and proceeded to hear the remainder of the State's case. The jury was not told anything about defendant's absence by anyone in the courtroom. They returned a verdict in the case that evening. On June 10 defendant was sentenced, although defendant had still not appeared or been found.

It is provided (Ill. Rev. Stat. 1973, ch. 38, §115—4.1) that a trial court may proceed with the trial in defendant's absence if defendant willfully absents himself from the courtroom for two or more days. Defendant's argument is that there was nothing to show that his absence was willful or voluntary. In view of the circumstances which we have recited, however, we believe, without any explanation whatsoever from defendant concerning his sudden disappearance, it must be presumed that his absence was voluntary and willful and with the knowledge that he was missing his trial. It is obviously unlikely that the defendant would be involuntarily absent from the courtroom for over a week in the middle of a trial, and also unable to contact the court, or his attorney, or his family for over a month.

It was pointed out by the State that the very fact that the court made a finding in the record is enough to support the determination of the trial court and also the sentencing of defendant in his absence. It is clear that the defendant may not simply determine not to appear in court during the trial, and then place the burden on the State to prove why he did not appear. Defendant failed to show up one morning in the midst of the trial and did not appear for the next eight days, despite the efforts of his grandfather, his attorney, and finally the police. Defendant makes no argument in his brief that his absence was anything but intentional and relies solely on the fact that he was absent and the court had nothing else to go on. On the basis of the record we do not believe that a new trial is required as to defendant.

■■ Any defendant may waive the constitutional right to be present at his trial. (*People v. Smith* (1955), 6 Ill. 2d 414, 416-17, 129 N.E.2d 164;

*People v. Rife* (4th Dist. 1974), 18 Ill. App. 3d 602, 607-8, 310 N.E.2d 179.) We conclude that defendant Thomas waived such right to be present by his absence from the trial as we have indicated. Since defendant did not make his whereabouts known to the court or counsel until after June 10, we also conclude that he, similarly, waived his right to a sentencing hearing under section 5—4—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, §1005—4—1).

Defendant also argues that the trial court committed reversible error by removing the burglary count from the jury during its deliberations. He also contends that the court erred in entering a judgment of conviction on all five counts of armed robbery for the reason that the robberies were all part of one act and one crime, *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.

The removal of the burglary count occurred when, in the midst of its deliberations, the jury submitted two written questions to the court. The second read, "Is it possible to convict a person of burglary if he is caught with a gun, or is it automatically armed robbery?"

Defense counsel argued, and the State concurred, that the jury should be merely reinstructed on the elements of armed robbery and burglary. The trial court observed, however, that should the jury return guilty verdicts in both crimes, he could impose judgment and sentence only on the more serious crime (armed robbery) since both crimes arose out of one act of robbing in the Brannock home. Apparently, for that reason, the court determined to withdraw the burglary count from the jury's consideration over the objection of defense counsel.

The supreme court of this State has declared that where a defendant is charged with several counts or offenses arising out of a single transaction or course of conduct, and where he is found guilty of more than one such charge, the court may enter a judgment of conviction and sentence on only one charge, which is usually, and permissibly, the more serious one (*People v. Williams* (1975), 60 Ill. 2d 1, 13-14, 322 N.E.2d 819; *People v. Lerch* (1972), 52 Ill. 2d 78, 284 N.E.2d 293; *People v. Whittington* (1970), 46 Ill. 2d 405, 265 N.E.2d 679). We have followed such rule in our court (*People v. Leggett* (3rd Dist. 1971), 2 Ill. App. 3d 962, 964, 275 N.E.2d 651; *People v. Myles* (3rd Dist. 1971), 2 Ill. App. 3d 955, 957, 275 N.E.2d 691).

The principle, however, does not require that a trial court cause the withdrawal of all charges except the more serious one from consideration by the jury. The principle applies only after a jury returns guilty verdicts on more than one count or charge, both or all of which arose out of the same course of conduct. The court in the cause before us apparently was assuming that the jury would find Thomas guilty of both the burglary count and at least one count of armed robbery, a result that the evidence

would support. It is not, however, the function or duty of the court to predict jury verdicts.

It has been noted that where defendant has been found guilty of both burglary and armed robbery stemming from a break-in into a restaurant, the court may enter judgment and sentence on only one of the offenses. *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Tiffin* (4th Dist. 1974), 16 Ill. App. 3d 367, 371-72, 306 N.E.2d 325.

■■ Although the court was in error in its action, we do not believe that it is necessary to remand the case for a new trial. The evidence was clearly sufficient, as we have already noted, to prove defendant's guilt of burglary of the Brannock home and of armed robbery of the occupants. Defendant argues only that the error prevented the jury from finding defendant not guilty of armed robbery, but guilty of burglary. On the basis of the record before us, it is unquestionable that, if the jury had found defendant guilty of burglary, it would necessarily have returned guilty verdicts on the five armed robbery counts, regardless of what the jury may have considered, in view of the evidence in the record. If the jury did compromise as the defendant argues, on the basis of their written inquiry to the court, why did the jury find the defendant guilty on all five counts of armed robbery? The only issue left for the jury to consider was whether or not defendant was guilty of armed robbery. The evidence unequivocally established that defendant was guilty of armed robbery and the jury, properly instructed, found defendant guilty on all five counts of armed robbery as the evidence indicated.

■■ The record clearly supports the verdicts of the jury that defendant was guilty of armed robbery beyond a reasonable doubt. Judgments of conviction and sentences should be entered only on the armed robbery counts which did not arise from the same transaction (*People v. Nicks* (4th Dist. 1974), 23 Ill. App. 3d 435, 442, 319 N.E.2d 531). If, however, there are distinct and separate crimes committed by the same person at different times, it is then proper to enter convictions on sentences for each separate offense (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601). On the basis of the record before us, it appears that the armed robbery of Allen Brannock, Jr., which was undertaken in the alley, was separate from the robberies which took place inside the home of the Brannocks. Upon the entry of the robbers into the Brannock home, the robbers announced that it was a holdup and they proceeded to rob the occupants at that time. All of the robberies which were completed in the home were part of one transaction which involved the robberies of the senior Brannocks, their daughter Lois, and two friends who were in the home. Judgments of conviction, therefore, and sentences should have been entered only as to the robbery of Allen Brannock, Jr., and on one of the other armed robbery counts, which apparently arose from the same transaction.

This cause is, therefore, remanded to the trial court with directions to vacate the convictions and sentences on the robbery of Mr. Brannock, Sr., their daughter Lois, and the two friends Surprenant and Wisniewski. Judgment of conviction and sentence as to the robbery of Allen Brannock, Jr., and as to the robbery of Mrs. Brannock were proper. An entry of judgment of conviction and sentence on such armed robbery counts is expressly affirmed.

Reversed in part and remanded with directions.

STENGEL and BARRY, JJ., concur.