THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEITH TERRY, Defendant-Appellant.

Fifth District   No. 75-8

Opinion filed May 6, 1976.

G. J. MORAN, J., dissenting.

Ralph Ruebner and J. Daniel Stewart, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Keith Terry and Tom Manon were indicted for four counts of armed robbery. Keith Terry ("defendant" hereinafter) was brought to trial before a jury in October of 1974. He was found guilty on all four counts and was sentenced to four concurrent terms of imprisonment of 4 to 6 years. From the judgment of conviction and sentence on each count defendant brings this appeal.

The evidence presented at the trial showed the following. At approximately 4 a.m., September 23, 1972, Donald Lee Armstrong, Roger Dworak, Maureen McShane, and Debbie (Barrington) Burt stopped at a motel in or near Fairmont City, Illinois. They parked their auto 30 or 40 feet from the motel office and Armstrong and Dworak walked to the office to try to get a room. They were unable to awaken anyone in the motel, and as they stood outside the office door, two Negro males (defendant and Manon) approached them and told them that it was hard to find an attendant at that particular time. Dworak and Armstrong then returned to their car. When they reached the car, Manon drew a gun and stated that he wanted their valuables. As Manon held the gun, defendant got a billfold and a watch from both Armstrong and Dworak, a dollar from Maureen McShane, and a dollar, a watch, and some keys from Debbie Burt.

Manon and defendant then asked for the keys to the victims' car. Armstrong argued with the robbers about the keys, and Manon and defendant agreed that they would throw the keys back to the victims as they made their escape. The robbers then walked to their own car, which was also parked in the motel lot, and tried to start it. Their car would not start, so they returned to the victims' car and announced to the victims that they would take that car. Defendant, who then had the gun previously held by Manon, got into the back seat with Armstrong and Maureen McShane. Manon got into the driver's seat. Next to him was Dworak and next to Dworak was Debbie Burt. Defendant held the gun in Armstrong's side; Manon drove the car. As they were riding along, defendant said that he would like to go to a country road; Manon said he would rather go into the city.

After riding approximately 5 minutes, they all saw a police car parked along side the road in the same direction they were traveling. The policemen, Sergeant Cruz and Patrolman Howard of the Fairmont Police Department, had stopped a speeder; and while Patrolman Howard was talking to the motorist, Sergeant Cruz was seated in the police car. As the car being driven by Manon neared the police car, Dworak grabbed the steering wheel and turned it sharply, causing the car to collide with the police car. Debbie Burt immediately jumped out of the car and shouted that they were being robbed and that the robbers had a gun. Armstrong grabbed the gun from defendant and told him to get out of the car. Sergeant Cruz ran to the car, opened the door, and pulled defendant out of the rear seat. Sergeant Cruz searched defendant and found some wrist watches and money in his pockets. In the meantime Patrolman Howard had taken custody of Manon.

The policemen took Manon and defendant to the Fairmont City Police station, where Sergeant Cruz read them their "*Miranda* rights" and asked each of them to make a written statement. After Sergeant Cruz questioned defendant about the incident, defendant did write out a statement. The Fairmont City Chief of Police, Ray Holley, then took the statement and typed it, handed the typed statement to defendant, and asked him to read it. Defendant did so and then signed the typed statement. The statement was read to the jury at trial and appears in the report of proceedings. The body of the statement reads:

> "Myself and Tom Manon had trouble with car and we pushed car into this motel the Indian Mounds Motel. Ulysses Dickson and Cleophns Gentry were asleep in back seat and did not get out of the car. We knocked on the motel door and no one answers we sit in car and waited, this car pulled into the motel looked like a white & blue Mustang, the two men got out, myself and Tom started to talk to them we told them to get into car Tom drove car

Mustang he then handed me the gun as we started out we took some money from the two girls and started toward E. St. Louis. I was in back seat one of the men and a girl was in back, we told them we was not going to hurt them as we wanted to get back to E. St. Louis, we then hit this police car and I had gun laying in my lap I don't remember if this man took gun it happened so fast, police came up and up got out of car. The car we were in belongs to Ulysses Dickson. Ulysses Dickson and Cleophns Gentry were in back seat asleep and did not know what we were doing."

Defendant raised the affirmative defense of insanity at trial (Ill. Rev. Stat., ch. 38, par. 6—2). Defendant, his mother, his grandmother, and a psychiatrist testified in support of defendant's claim of insanity. The thrust of their testimony was that defendant had had a heart attack and a kidney problem. He had been hospitalized for a lengthy period and afterward had become "angry with the world," appeared "quite bitter," and "so much different" than he had before, and had memory losses. On direct examination the psychiatrist, Dr. Frank Perez, testified that the type of physical ailments and medical treatment defendant had undergone might or might not affect a person's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. On cross-examination Dr. Perez stated that defendant's activity during the robbery incident, as presented in the State's case-in-chief was "rational," "ordered," "purposeful," and "reasonable" behavior.

At the close of all the evidence the court gave proper jury instructions, including an instruction on the defense of insanity. The jury returned a guilty verdict on all four counts.

In this appeal defendant contends that he was deprived of a fair trial because of an improper question asked of defendant's mother on cross-examination by the Assistant State's Attorney, and because of improper closing argument by the Assistant State's Attorney. The State argues that by failing to raise the impropriety of the objected-to question in defendant's written post-trial motion, defendant has waived that issue. The State also argues that, in light of the overwhelming evidence of guilt, both of these alleged errors are harmless.

The question to which defendant draws our attention occurred during the following colloquy:

"[Assistant State's Attorney Kuehn]: There were no incidents prior to this where he [defendant] showed any type of antisocial behavior?

A. Before this thing?

[Assistant State's Attorney Kuehn]: Before this happened to him—no purse snatching?

A. No, none.

Mr. Johnson: I will object to that; I don't see the relevance.

The Court: I will overrule the objection."

There was no·attempt by the Assistant State's Attorney to follow up this question with proof of any such prior criminal activity on the part of defendant, and the record shows that the question was without foundation. Defendant's only prior criminal record consisted of an arrest and conviction for driving without a license.

The portion of the Assistant State's Attorney's closing argument, to which defendant refers was the following:

"People say, what are you doing about crime? They want to know; and I answer them—this is what I tell them; I present the evidence in the case—present it fairly, but it isn't up to me to do anything about crime, the only people that can do anything about crime as I tell them—are you—the people I am looking at right now, because when you think about it—all the money that is expended in law enforcement, detecting, and investigating crime—bringing criminals to trial—

MR. JOHNSON: I will object to this whole line of argument.

THE COURT: I will overrule the objection; you have four minutes.

MR. KUEHN: In extraditing criminals—in bringing witnesses to testify—in paying—what is the sense—it all comes down to what you twelve people want to do about crime."

■■ Without a doubt, the question about purse snatching was uncalled for and highly improper. It amounted to a totally unsupported and unsupportable insinuation of misconduct (see *People v. Nuccio*, 43 Ill. 2d 375, 253 N.E.2d 353). The portion of the closing argument set out above was also improper in that it asked the jury to consider matters which were not supported by evidence in the case and which, in any event, could not be material to defendant's guilt or innocence. (*People v. Harris*, 33 Ill. App. 3d 600, 338 N.E.2d 129.) Nevertheless, we conclude that these errors were harmless and that therefore a reversal is not required. First of all, the improper insinuation consisted of a single, isolated question (contrast *People v. Nuccio*, in which there were persistent and repeated improper insinuations). Similarly, the improper portion of the closing argument amounted to a single, isolated reference to immaterial matters and did not constitute a material factor in the conviction. (See *People v. Harris*.) Secondly, the jury was properly instructed that they should consider only the evidence in the case, that the evidence consisted only of the testimony of the witnesses and the exhibits, and that neither the opening statements or closing arguments of the

attorneys should be considered as evidence. Finally, the evidence of defendant's guilt was overwhelming, and the result could not have been different had these errors not been made.

■■ Defendant's final contention is that it was improper for the court to enter a judgment of conviction and impose a term of imprisonment on each of the four counts of armed robbery. Defendant asserts that the taking of property from each victim amounted to a single transaction with but one motivation. In support of this argument, defendant cites *People v. Schlenger*, 13 Ill. 2d 63, 147 N.E.2d 316; *People v. Whittington*, 46 Ill. 2d 405, 265 N.E.2d 679; *People v. Butler* (5th Dist.), 31 Ill. App. 3d 433, 334 N.E.2d 831; *People v. Nicks*, 23 Ill. App. 3d 435, 319 N.E.2d 531; and *People v. Thomas*, 37 Ill. App. 3d 55, 347 N.E.2d 264. We note that leave to appeal to the Supreme Court has been granted the State under Supreme Court Rule 315 (Ill. Rev. Stat., ch. 110A, par. 315) in *People v. Butler*.

We have concluded that the majority opinion in *Butler* is based upon an erroneous application of law and that the dissenting opinion in that case is more in line with the established law in Illinois. We, therefore, decline to follow the majority opinion in *Butler*. Furthermore, neither *Schlenger* nor *Whittington* supports defendant's position on this issue. It is apparent, too, that *People v. Nicks* is, like *Butler*, contrary to the mainstream of cases on the subject and we likewise decline to follow it and *People v. Thomas* which follows it.

Several Illinois cases have found that a criminal defendant can be convicted and sentenced for more than one robbery (or armed robbery) when property is taken from more than one victim, despite the fact that each robbery occurs at or nearly at the same time. (*People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied*, 412 U.S. 918; *People v. Ellis* (3rd Dist.) 132 Ill. App. 2d 920, 271 N.E.2d 47; *People v. Lewis* (1st Dist.), 17 Ill. App. 3d 188, 308 N.E.2d 59, *aff'd.*, 60 Ill. 2d 152, 330 N.E.2d 857; *People v. Rogers* (5th Dist.), 23 Ill. App. 3d 115, 318 N.E.2d 715; *People v. Nurse* (1st Dist.), 34 Ill. App. 3d 42, 339 N.E.2d 328.) Of the Supreme Court decisions which have barred multiple convictions and sentences for offenses arising out of the same act or the same conduct, none have done so with respect to simultaneous robberies of more than one victim. For example, see *People v. Schlenger* (multiple convictions for armed robbery and burglary impermissible); *People v. Duszkewycz*, 27 Ill. 2d 257, 189 N.E.2d 299 (multiple convictions for rape and incest impermissible); *People v. Stewart*, 45 Ill. 2d 310, 259 N.E.2d 24 (multiple convictions for attempt robbery and aggravated battery impermissible); *People v. Whittington* (multiple convictions for escape from penitentiary and theft of auto impermissible); *People v. Lerch*, 52 Ill. 2d 78, 284 N.E.2d 293 (multiple convictions for aggravated battery and attempt

escape impermissible); *People v. Cox*, 53 Ill. 2d 101, 291 N.E.2d 1 (multiple convictions for indecent liberties with a child not permissible from acts of sexual intercourse and oral-genital contact); *People v. Lilly*, 56 Ill. 2d 493, 309 N.E.2d 1, and *People v. Scott*, 57 Ill. 2d 353, 312 N.E.2d 596 (multiple convictions for rape and indecent liberties impermissible); and *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819 (multiple convictions for armed robbery and burglary impermissible).

In *People v. Prim*, the Supreme Court held that the defendant could be convicted and sentenced for the murder but not also for the attempted armed robbery of the same victim since both offenses occurred during the same conduct. However, the court affirmed the separate convictions and sentences for each armed robbery of three other victims involved even though the robberies occurred at or nearly at the same time. The court recognized that these three armed robberies amounted to three separate and distinct crimes.

If one unlawfully kills four persons during an armed robbery, could it be said that he could be convicted of only one murder? We think not. And so it is with the four armed robberies in question here.

In the instant case defendant took property from each of four victims while Manon held a gun on the victims. In entering a judgment of conviction and imposing sentences on each of the four counts of armed robbery, the court did not err. Accordingly, the judgments are affirmed.

Affirmed.

KARNS, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

I disagree with the conclusions reached by the majority concerning our holding in *People v. Butler*, 31 Ill. App. 3d 433, 344 N.E.2d 831. I also believe that the defendant was denied a fair trial before an impartial jury in violation of the sixth amendment to the Constitution of the United States by the argument of the assistant State's attorney who deliberately put the jury in the position of prosecutor. The error was compounded when the trial judge overruled defendant's objection to this totally unwarranted and inflammatory argument. I was always of the opinion that the test of whether a defendant received a fair trial was not based upon the degree of defendant's culpability, but whether he received a fair trial.