THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTHUR ROBINSON, Defendant-Appellant.

First District (3rd Division)　No. 62392

Opinion filed August 19, 1976.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Donna Jean Ramey, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant was indicted on six counts of armed robbery, each count involving a separate victim. After a trial without jury, he was found guilty as to counts 2, 3 and 4, namely, the armed robbery of Jeffrey Jones, Calvin Johnson and Hattie Johnson, respectively. A judgment of conviction was entered and the trial court imposed a sentence of three to five years in the penitentiary.

On appeal defendant contends that the prosecution failed to disprove his affirmative defense of compulsion beyond a reasonable doubt, and alternatively, that the trial court erred in entering judgment of conviction on three counts of armed robbery which all arose out of the same criminal transaction. The pertinent facts follow.

Calvin Johnson testified for the State. On July 16, 1971, he and his wife, Hattie Johnson, resided on the second floor of an apartment building at 1457 South Hamlin Avenue, in Chicago. Jeffrey Jones and his wife Esther resided on the first floor with Jeffrey Jones' parents. Esther Jones and Hattie Johnson are sisters. At 11 a.m. Johnson and his wife descended the hallway stairs and noticed that the front door of the Jones apartment was ajar. They knocked at the front door and rang the doorbell. A man came to the door and in reply to Hattie Johnson's inquiry said that Esther Jones was busy. When the Johnsons inquired further the man pulled out a handgun and forced them into the living room. Johnson had seen this man previously and knew him as "Mr. Hilton" and "Bo Peep." Johnson saw Jeffrey Jones' parents sitting on the sofa; Jeffrey also was on the sofa, but he was tied up and a pillow had been placed over his head. Johnson then saw Esther Jones come from the rear of the apartment escorted by a man he identified at trial as defendant, who was armed with a handgun. Hilton then took money and jewelry from Johnson and his wife and tied up both of them. Hilton and defendant went into the bedroom and began to ransack it, then left the apartment. Some 30 minutes later Esther Jones untied her husband and the Johnsons.

Hattie Johnson testified substantially to the same events as her husband, except she did not testify that the assailant who tied her up had a weapon.

Jeffrey Jones testified that he was confronted in his apartment by a man who put a handgun to his head and announced a stickup. He positioned Jones on the sofa, tied him up and put a pillow over his head. Jones did not see anyone else. After being released by his wife he discovered that the bedroom had been ransacked and money and jewelry taken.

Defendant testified in his own behalf. He had known Claude Hilton, who was also called Bo Peep, for about 12 years; they were both drug

addicts. He knew Hilton had a violent temper and had heard that he had shot at other people in the past. On the morning of July 16, 1971, he met Hilton in a pool hall; when Hilton asked if he had any money the defendant replied that he did not. Hilton then said he knew where to get some money and that defendant should go with him to get it and share in drugs he would buy with the money. Defendant did not ask where he planned to get the money nor where they were going when they left the pool hall. As they walked down the 1400 block of South Hamlin Avenue defendant met a Mr. Moore, father of a friend. He talked with him for several minutes while Hilton continued walking. Defendant then went into a building he had seen Hilton enter, and he noticed the door to the first floor apartment was open. Hilton called to him from inside and when defendant went into the living room he saw Hilton holding a gun on an elderly man. Hilton told defendant to go to the back to look for any other occupants, and defendant found Jeffrey and Esther Jones in the kitchen. Hilton took Jones into the living room and tied him up while defendant remained in the kitchen with Esther Jones. He said he told her to sit down and keep calm because Hilton was very nervous. He heard the doorbell ring and a knock at the front door. When Hilton called to him to come out defendant escorted Esther Jones into the living room where he saw Hilton forcing the Johnsons into the apartment. Hilton then took money and jewelry from the Johnsons and Esther Jones.

Defendant denied taking anything from the apartment or from anyone, but admitted having tied up Hattie Johnson and helping Hilton ransack the bedroom. He denied being armed, but admitted he shared in the robbery proceeds and did not report the incident to the police. He stated that until he entered the apartment he did not know Hilton was armed and planning a robbery. He further testified that while in the apartment he saw an expression of anger on Hilton's face he had never seen before; that Hilton was waving his gun at everyone; that he considered fleeing from the back of the apartment when he was there alone with Esther Jones, but did not attempt to because he thought the kitchen door had bars on it, and that he was concerned as to what Hilton would do to him if he ran. In response to an inquiry by defense counsel as to whether he would have suffered death or great bodily harm from Hilton if he did not comply with his directives, defendant stated that such was possible. He added that he believed he could prevent others from being hurt if he stayed in the apartment.

In rebuttal, Jeffrey Jones testified that the kitchen door and windows in his apartment were not barred.

After closing arguments the trial court found defendant guilty on the armed robbery counts 2, 3 and 4, relating to Calvin Johnson, Hattie

Johnson and Jeffrey Jones. Judgment of conviction was entered upon those findings and a hearing in aggravation and mitigation was held. The trial court imposed sentence upon defendant to serve three to five years in the penitentiary.

■■ Defendant first contends that the prosecution failed to prove beyond a reasonable doubt his guilt as to the issue raised by his affirmative defense of compulsion. We disagree. Section 3—2 of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 3—2) provides that an affirmative defense is raised by an accused by the presentation of some evidence thereon; further, that once raised, the prosecution must sustain the burden of proving the accused guilty beyond a reasonable doubt as to that issue, as well as all the other elements of the offense.

Section 7—11 of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 7—11) provides in pertinent part:

> (a) A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes that death or great bodily harm will be inflicted upon him if he does not perform such conduct.

The statute requires first, the presence of an imminent danger of death or great bodily harm being inflicted; and second, that the accused have a reasonable belief that the foregoing would be inflicted upon him if he did not perform the conduct. (*People v. Ricker* (1970), 45 Ill. 2d 562, 262 N.E.2d 456.) A threat of future injury is not sufficient to excuse criminal conduct. (*People v. Davis* (1974), 16 Ill. App. 3d 846, 306 N.E.2d 897.) Neither element of the affirmative defense of compulsion is supported by the instant record.

■■ Defendant testified that he knew Claude Hilton to be a person of violent temper who had allegedly fired a weapon at others in the past. He stated that while in the apartment Hilton waved his gun around and directed defendant's activities. Yet, defendant did not testify that Hilton had threatened him with death or physical harm, or that he had demanded that defendant engage in the commission of the offenses. Thus, there was an absence of evidence of a threat of imminent infliction of physical harm to defendant. Defendant's own testimony further negated the existence of a reasonable belief on his part that death or physical harm would be inflicted on him if he did not comply with Hilton's directions. He stated that he was concerned with what Hilton would do to him in the future if he fled from the commission of the robberies. When questioned as to whether he would suffer death or great bodily harm at the hands of Hilton if he did not participate in the offenses, defendant said only that he

believed it was a possibility. Therefore, inasmuch as he failed to raise the affirmative defense of compulsion, the prosecution was not required to disprove such defense beyond a reasonable doubt. *People v. Davis.*

■■ Moreover, even if it were concluded that defendant had succeeded in raising the affirmative defense, our ultimate holding would not be affected. The record indicates that the trial court disbelieved defendant's testimony concerning compulsion. As to such testimony the trial court stated:

> "And it is the law, Counsel, that when one tells a story as incredulous, then they are bound by it. It is incredible. It is, in fact, incredulous. There will be a finding of guilty, gentlemen."

It was for the trial court as the trier of fact to judge the credibility of the witnesses and the weight to be afforded their testimony, including that of the defendant. (*People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.) It cannot be said on this record that the trial court erred in not crediting defendant's testimony. *People v. Coogler* (1975), 35 Ill. App. 3d 176, 340 N.E.2d 623.

■■ Defendant contends in the alternative that the trial court erred in entering judgment on the three counts of armed robbery, offenses which he argues all arose from the same criminal conduct. Again, we disagree. We believe that the decision in *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601 is dispositive of defendant's contention. Defendant there appealed from conviction and sentencing on three counts of armed robbery, one of attempted armed robbery, and one count of felony murder. The defendant was one of four men who boarded a public bus and robbed the driver and two passengers. A third passenger was shot to death while resisting the theft of her purse. The court in *Prim* held that the attempted armed robbery and the resulting murder of the third passenger arose from the same conduct and that only a sentence for the more serious of the two offenses should have been imposed. However, as to the armed robberies of the driver and the other passengers, the court stated at page 78:

> "The armed robbery of the bus driver, of William Gierz and of Ermelindo Maldonado were three separate and distinct crimes committed by different persons or the same person at different times. The same is true as to the murder of Mary Zielinski. Separate criminal acts were involved in each case and the court properly imposed separate though concurrent sentences for each offense. *People v. Raby*, 40 Ill. 2d 392."

In the instant case each of the three armed robberies was contemporaneous in time but committed against three separate victims.

We find no distinction between the entry of judgment of conviction on the three counts of armed robbery in this case and the affirmance of the separate armed robbery convictions and sentences in *Prim.*

In support of his contention that the trial court erred in entering judgment of conviction on all three armed robbery counts defendant cites *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v. Butler* (1975), 31 Ill. App. 3d 433, 334 N.E.2d 831; and *People v. Thomas* (1976), 37 Ill. App. 3d 55, 347 N.E.2d 264. *Lilly* is clearly distinguishable. There, the court held that separate convictions for the offenses of rape and indecent liberties involving the same victim could not be permitted to stand when both arose from a single act of the defendant. In *Butler* the Appellate Court for the Fifth District held that contemporaneous armed robberies of two victims by the defendant and his accomplice arose from a single criminal conduct and that only a single conviction on one count of armed robbery relating to one victim was permissible. In *Thomas* the Appellate Court for the Third District reached a similar conclusion. However, in the recent case of *People v. Terry* (1976), 38 Ill. App. 3d 517, 347 N.E.2d 869, the Appellate Court for the Fifth District disavowed its holding in *Butler* as an erroneous application of law, and further declined to follow *Thomas,* which in turn had relied on *Butler.* The *Terry* decision recognizes that under *People v. Prim* a defendant may be convicted and sentenced for more than one armed robbery when property is taken from more than one victim, despite the fact that each offense occurs at or nearly at the same time. We concur in the reasoning of *Terry* and find that the decisions in *Butler* and *Thomas* afford little support to the merits of defendant's contention. We conclude in the instant case that the trial court did not err in convicting defendant of the multiple offenses. However, we must further review the sentence imposed.

Consistent with our holding, where two or more offenses arise from separate though related acts, separate sentences, either consecutive or concurrent, are permitted. (*People v. Walker* (1971), 2 Ill. App. 3d 1026, 279 N.E.2d 23.) Defendant here elected to be sentenced under the former statute which provided a minimum term for armed robbery of not less than two years (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). A hearing in aggravation and mitigation was conducted at which a presentence report was considered. The prosecutor directed attention to the prior finding of guilty on three counts of armed robbery, and defense counsel responded that "the three count indictment was one transaction, and happened to involve more than one person and for that reason, they were separate counts." The hearing concluded with the following:

> The Court: * * * The Court will make the minimum of 3 years and a maximum sentence here of 6 years.

Mr. Holloway [defense counsel]: If your Honor please, are you saying that you would exceed the State's Attorney's recommendation?

The Court: Pardon me, yes, I heard his recommendation, I think 3 years is very, very light. It is about time that people should be able to feel safe in their own home. Make it 3, maximum of 6— make it 3 and maximum of 5.

A sentence should be so complete as not to require construction by the court to ascertain its import, and so complete that it will not be necessary for a nonjudicial or ministerial officer to supplement the written words to ascertain its meaning. (*People v. Walton* (1969), 118 Ill. App. 2d 324, 254 N.E.2d 190.) In a criminal case a final judgment consists of an adjudication of guilt and an imposition of sentence (Ill. Rev. Stat. 1975, ch. 38, par. 1005—1—12; *People v. Mayhew* (1974), 18 Ill. App. 3d 483, 309 N.E.2d 672; *People v. Tomer* (1973), 15 Ill. App. 3d 309, 304 N.E.2d 129), and in the absence of a sentence, a judgment of conviction is not final and normally cannot be reviewed (*People ex rel. Filkin v. Flessner* (1971), 48 Ill. 2d 54, 268 N.E.2d 376). However, here, at least one final judgment must be considered as entered inasmuch as sentence was imposed. Since there is a final judgment which is a proper subject of review, this court has authority under Supreme Court Rule 366 to deal with any incomplete judgment which may also be involved in the case. Ill. Rev. Stat. 1975, ch. 110A, par. 366; *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v. Mayhew.*

■■ The instant record on appeal is silent and neither confirms nor negates whether a single or multiple sentence was imposed. This is distinguishable from *People v. Harrison* (1969), 118 Ill. App. 2d 135, 254 N.E.2d 848 (abstract opinion), where following a conviction for rape and armed robbery, the trial court stated, "* * * on the finding of guilty to both counts here, I sentence you to the Illinois State Penitentiary for a term of not less than five nor more than eight years." This court there held that from the language used, "on the finding of guilty to both counts here," it was clear that the defendant was properly sentenced to five to eight years on the two charges to run concurrently. However, we are unable to determine from the instant record whether the sentence was imposed on each of the armed robberies in counts 2, 3 and 4, to be served concurrently as in *Walker*, and if not, on which count or counts imposed or not imposed. If sentence has not been imposed as to any of counts 2, 3 and 4, the conviction as to such count or counts is to be vacated as an incomplete judgment. *People v. Lilly.*

For the reasons set forth, the judgment of conviction as to counts 2, 3 and 4 is affirmed and the cause is remanded to the circuit court of Cook County with directions for further proceedings not inconsistent with this

opinion, to clarify and make definite the count or counts upon which the sentence was imposed, whether concurrent if applicable, and to vacate the conviction as to the counts, if any, upon which sentence was not imposed. An amended mittimus shall thereupon be ordered.

Affirmed in part; remanded in part with directions.

DEMPSEY and McNAMARA, JJ., concur.