**People of the State of Illinois, Appellee, v. Harry A. Smith, Jr., Appellant.**

**Gen. No. 50,353.**

First District, Third Division.

June 9, 1966.

Rehearing denied June 30, 1966.

Barry Goodman, Bernard B. Brody and Julius Lucius Echeles, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas Regan, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Harry Smith was indicted for attempted murder and after a nonjury trial was found guilty and sentenced to a term of one to fifteen years in the penitentiary.

On the evening of March 28, 1963, Barbara Ehrenfeld was walking toward her home in Flossmoor, Illinois. Hearing footsteps behind her, she turned around and saw a person whom she later could describe only as a white man, 5 feet 10 or 11 inches tall and slightly built. He looped a leather belt around her neck and dragged her, half standing and half falling, backward for a half a block. The constriction of the belt prevented her from breathing. She tried to scream but was unable to. He continued to drag her until the belt broke. She then said "Please, don't" and screamed. The man ran away. Part of a broken belt was found at the place of the attack. As a result of the assault Miss Ehrenfeld had leather burns on the front of her neck, bruises on her nose and a bump on the back of her head.

Miss Ehrenfeld testified that the defendant resembled her attacker but she could not identify him. The only direct evidence connecting the defendant with the crime was the belt, which he admitted was his, and a written

confession signed by him. In the confession he described his preparations for the attack and the assault itself, and stated that the belt found at the place of the attack was the one he used.

The defendant raises two points on appeal: (1) his motion to suppress the confession should not have been denied, and (2) the evidence failed to show that he had the intent to commit murder.

After the commencement of the trial the defendant's lawyer moved orally to suppress the confession on the grounds that: (1) the confession was not voluntary, (2) the defendant was held incommunicado for two days and was told that he would not be released if he did not make a statement and (3) the defendant's constitutional rights were not explained to him. The judge reserved his ruling until a written motion was filed, and the trial proceeded. When the written motion was filed the judge heard evidence as to its voluntariness. The evidence is imprecise as to just when the defendant was first formally questioned about the assault on the prosecuting witness. He had been arrested at 3:15 a. m., March 30, 1963, by the police of Homewood, Illinois, and he was held thereafter in the Homewood jail. For some time after his arrest he was questioned about his activities immediately prior to his arrest. He was twice told he could make a telephone call but he declined to do so. At 5 a. m. he made a statement describing his prearrest activities. He was again questioned briefly around 8 a. m. At noon he was taken to the Flossmoor Police Station and placed in a lineup. From 1:00 p. m. to 5:00 p. m. he was questioned and gave statements pertaining to four offenses not related to this appeal. During the course of the interrogation the defendant was told several times that he could use the telephone and could have a lawyer. It appears that it was about 5:00 p. m. when the questioning turned to the present case. The defendant was informed that if he made a statement it could be used

449

against him and that he would have to make it of his own free will. Chief of Police Clifford Pauling and Officer John Barton of Flossmoor came to the Homewood station and participated in the questioning. They left shortly after 6:00 p. m. They returned around 9:00 p. m. at which time the questioning was resumed and the statement taken. Officer Barton did the questioning in the presence of Pauling and Chief of Police Melvin Meyer and Elliott Marovich of Homewood. Barton advised the defendant of his constitutional rights and the defendant responded that he wanted to confess. Of the four officers present when the confession was taken only Chief Meyer testified at the hearing on admissibility. The State neither called the other witnesses nor did it show that it was not possible or feasible to produce them as witnesses.

██ After Meyer testified the State rested. No contrary evidence was offered. The defense argued that the motion should be sustained because all the witnesses to the confession had not testified. The court said that the motion alleged two grounds which might make the statement inadmissible: the allegations that the defendant had been held incommunicado for two days before he confessed and that he had been told that if he did not confess he would not be released. The court pointed out that the State had met each of these grounds, that its witnesses had testified that the statement was made voluntarily, that it was made the day of the defendant's arrest and not after he had been held for two days, and that he had not been told that if he refused to confess he would not be released. The court said that if the defendant would present evidence to rebut the State's case or if the defendant would particularize his charges, the court would require the State to produce additional witnesses—otherwise, further proceedings on the motion seemed pointless. The defendant did not testify and no evidence was produced in support of the motion, nor

were the charges specified as the court had suggested. The motion was thereupon denied, the trial was resumed and the confession was received in evidence. The court's ruling was correct. When a motion is made to suppress a confession on the ground that it is not voluntary, the burden of going forward with the evidence and the burden of proving that the confession is voluntary is on the State. Ill Rev Stats, ch 38, § 114–11(d) (1963). The dual burdens, however, do not have to be met simultaneously. In People v. Fox, 319 Ill 606, 150 NE 347 (1926), the court stated:

> "The order of proof is largely within the discretion of the trial judge. While the burden of showing that no improper inducement existed when the confession was made is upon the prosecution, it is not necessary for the prosecution to produce all its evidence before any evidence is produced on behalf of the accused. After the State has made a prima facie case, then the burden of going forward with the proof properly shifts to the accused. . . . After the accused has made his case, the prosecution may produce evidence in rebuttal to meet that offered against the competency of the confession. In order to meet its burden of showing the confession to be voluntary, the prosecution must show by its witnesses the circumstances under which the confession was made, with sufficient detail to enable the court to determine the question."

This statement was quoted and approved in People v. Davis, 10 Ill2d 430, 140 NE2d 675 (1957), cert den 355 US 820.

 It is true, as the defendant states, in Illinois the rule is that when there is evidence that a confession has been coerced, the confession should not be admitted in evidence until each material witness on the issue is either produced or his absence explained. People v. Bul-

451

locks, 23 Ill2d 515, 179 NE2d 628 (1962). Convictions are reversed if this rule is not followed. People v. Wright, 24 Ill2d 88, 180 NE2d 689 (1962); People v. Dale, 20 Ill2d 532, 171 NE2d 1 (1960). In the instant case, however, there was no evidence that the confession was made involuntarily. There was nothing but an allegation to that effect. The allegation that the defendant was held incommunicado for two days proved to be groundless in the face of proof that his confession was given on the first day of his arrest. The further allegation that he was told that he would not be released unless he made a statement was most general; the person who made the threat or those present when it was made were not identified or described. The time when the threat was made, whether at the arrest, the period of detention, or the interrogation, was not specified. The place where the threat was made, whether at the Flossmoor police station where the defendant was placed in a line-up or at the Homewood police station where he was questioned, was not designated. No reason was given why the circumstances in which the threat was made could not be clarified. Furthermore, the alleged trust was refuted by the State's witnesses. The last allegation, that his constitutional rights were not explained to him, was not a basis for suppressing the confession (People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33 (1964), cert den 380 US 961; People v. Lewis, 32 Ill2d 391, 207 NE2d 65 (1965)) and, in any event, Chief Meyer testified that the defendant had been advised of his constitutional rights before he confessed.

 At this posture of the case the State had met its burden of going forward and the court had heard enough evidence, absent contrary proof, to decide the issue. It would have been useless for the court to have heard further evidence rebutting charges that the defendant was unable or unwilling to support. Moreover, the motion which the court indulgently permitted to be

filed after the trial had started was not made specific despite the invitation to do so and the court's statement that if done the State would be compelled to produce all witnesses. The defendant argues that to require him to particularize the time or place of the threat, or to describe the person who made it or the persons present when it was made, as a condition precedent to the State's duty to produce all the witnesses to the coercion, is to transform the State's burden to prove a confession voluntary into a burden on the defendant to prove it involuntary. This argument confuses the burden of persuading the trial court that the confession was voluntary—a burden which the State bears always—and the burden of bringing forth evidence as to its being involuntary—a burden which shifts to the defendant after the State has made a prima facie case, and shifts back to the State when the defendant has produced evidence. People v. Davis, 10 Ill2d 430, 140 NE2d 675 (1957).

██ ██ The competency of a confession allegedly procured through coercion is for the trial court to determine upon a preponderance of the evidence and a court of review will not disturb the finding of the trial court unless it is against the manifest weight of the evidence. People v. Joe, 31 Ill2d 220, 201 NE2d 416 (1964). In this case there is no reason to disturb the court's ruling which was proper procedurally and correct evidentially.

The second point raised by the defendant (that since the evidence failed to show that he had an intent to commit murder, he could not be guilty of attempted murder) must be assayed in relation to his confession and the testimony of Barbara Ehrenfeld. The defendant did not testify at the trial and no witnesses were called in his behalf. The fact that he discontinued his attack when his victim said "Please, don't" is offered as evidence of his lack of intent to murder. Excerpts from the confession—". . . I . . . vaguely remember putting my belt around her head and starting to pull her back

up the street, until such time as I heard her say 'Please, don't.' At that time I suddenly remembered what I was doing, and I dropped her and the belt and started running back towards the car"—are offered as evidence of his lack of conscious awareness of the nature of his conduct and, hence, evidence of his lack of conscious objective or purpose.

■■■■■ Section 8-4(a) of the Criminal Code of 1961 (Ill Rev Stats, ch 38, sec 8-4(a) (1963)) provides that "a person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." An intent to kill or to do great bodily harm to the victim is an intent to commit the offense of murder. Ill Rev Stats, ch 38, sec 9-1(a)(1) (1963). Section 4-4 of the Criminal Code defines "intent":

> "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct."

As the Supreme Court noted in People v. Coolidge, 26 Ill 2d 533, 187 NE2d 694 (1963), intent is a state of mind and if it is not admitted, it can be shown only by surrounding circumstances; consequently, an intent to commit murder may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. A sane man is presumed to intend all the natural and probable consequences of his own deliberate act; if one voluntarily and willfully does an act the direct and natural tendency of which is to destroy another's life, the conclusion, in the absence of qualifying facts, is that the taking of the other person's life was intended. People v. Brooks, 52 Ill App2d 473, 202 NE2d 265 (1964); People v. Coolidge, supra. The evidence was that the defendant placed a leather belt around Miss

Ehrenfeld's neck and used it to drag her backwards; that the belt prevented her from breathing; and that Miss Ehrenfeld was released only by the breaking of the belt. This evidence makes clear that the direct and natural tendency of the defendant's act would be to destroy his victim's life, and supports the conclusion that he intended to take her life. Miss Ehrenfeld would have been strangled if the belt had not broken. That the attack ceased when the breaking of the belt allowed Miss Ehrenfeld to say "Please, don't" and to begin screaming is evidence that the intent to murder was frustrated rather than evidence that the defendant lacked this intent.

The fragments quoted from the confession as evidence of his lack of intent, when placed in context, do not indicate that the defendant was unaware of what he was doing:

> "I turned the [automobile] lights off but left the engine running; the radio was playing. I got out of the car and headed east on Hawthorne Lane and turned into a driveway and concealed myself in [a] garage, assuming the girl would come down this street. The garage had a recess[ed] entrance in which I stood. I saw her coming and as she passed I followed her down the street. As she approached the dormer and I said 'Hi.' At this time I was pretty close to her and vaguely remember putting my belt around her head and starting to pull her back up the street, until such time as I heard her say 'Please don't.' At that time I suddenly remembered what I was doing, and I dropped her and the belt and started running back towards the car. I got in the car, turned the corner going north and then turned on my headlights."

The defendant parked his automobile with the motor running, so that he could leave quickly, but left its head-

lights off, so that the parked auto would not attract attention. He went where he thought his victim would pass by; he found a place where he would be concealed as she passed by, so that he could attack from the rear. To prevent identification of his auto or license number as he fled, he did not turn on the headlights till he had driven some distance.

The defendant's confession is not a document drafted by a lawyer; the language used by the defendant, whose choice of words no doubt was affected by his emotions and his education, cannot be subjected to the same type of construction as the language of a commercial contract. If there are inconsistencies between the defendant's description of his careful preparations for the attack and his description of the attack itself, the trial court, as trier of fact determining the credibility of the confession, could accept all, part or none of the confession. People v. DiGerlando, 30 Ill2d 544, 198 NE2d 503 (1964). We find no error in the court's conclusion that the evidence established the defendant's guilt beyond a reasonable doubt.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN P. J. and SCHWARTZ, J., concur.