2 Ill. App.3d 1022 (1971)
279 N.E.2d 41
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
MARY LOUISE GRAHAM, Defendant-Appellant.
No. 54109.
Illinois Appellate Court  First District.
November 17, 1971.
*1023 Gerald W. Getty, of Chicago, (Suzanne M. Kohut, James N. Gramenos and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.
Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Arthur L. Belkind, Assistant State's Attorneys, of counsel,) for the People.
Judgment affirmed.
Mr. JUSTICE BURMAN delivered the opinion of the court:
The defendant, Mary Louise Graham, was tried on the charge of murder and found guilty by a jury of the lesser-included offense of voluntary manslaughter. She was sentenced to serve not less than two nor more than ten years in the Illinois State Reformatory for women.
On appeal, defendant contends (1) that she was not proven guilty beyond a reasonable doubt and (2) that the prosecutor's inflammatory remark in his closing argument denied her a fair trial.
Rodney Thortsen, brother of the deceased Jack Thortsen, testified that he resided with his brother at 5045 N. Kenmore. At about 4:00 A.M. on February 17, 1967, he was asleep in the bedroom when he was awakened by his brother and a woman entering the apartment and *1024 engaging in loud talking and argument. He yelled for them to be quiet and went back to sleep. At about 5:00 A.M., he awoke again and saw the defendant trying to get out the door. He noticed his brother lying on the floor and asked her what had happened to him. She replied, "He fell." Defendant then left the apartment and Rodney Thortsen went back to sleep. When he left for work in the morning, his brother was still on the floor, and when he returned home that evening, he discovered that his brother was dead.
On cross-examination, the witness said his brother often came home drunk and was frequently still lying on the floor when he left for work in the morning. He also testified that he had heard furniture being knocked down.
It was stipulated that if Dr. Jerry Kearns were called to testify, he would state that his autopsy disclosed with reasonable medical certainty that the cause of Jack Thortsen's death was a bullet wound of the chest, heart and lungs.
The defendant, Mary Graham, age 26, took the stand in her own behalf. She testified that on February 17, 1967, at 2:30 A.M., she went to a tavern with her roommate. While there, she overheard a group of men saying they were going to "jack roll" the deceased. She approached him and told him what she had heard. He asked her if she wanted money and she said no, but she suggested that they go get some coffee at a restaurant so that he would not have to leave the tavern alone. He said, "No * * * let's go to my place and have a drink." Once inside his apartment, she told him that she didn't have time for a drink, and was about to leave, but he said, "You're not going anywhere," used foul language, slapped her and threw her across the room. She picked up her purse and ran to the kitchen door, but could not open it. He grabbed her and hit her across the face again. At this point, she drew a gun from her purse, but he just laughed and grabbed her throat. While he was choking her, she fired the gun. Thortsen clutched his stomach and fell backwards on to the floor. As she started for the front door, she heard someone in the bedroom and told him to call an ambulance and the police because Thortsen was hurt. Then Rodney Thortsen came out of the bedroom and said, "No, * * * he'll be okay when he wakes up * * * * What did he do; fall and bump his head?" and she said, "Yes." Miss Graham testified that she was in the apartment for 15 or 20 minutes and that she left at about 4:30 A.M. She threw the gun in the lake and walked back to her apartment.
On cross-examination, defendant admitted that she did not report the incident to the police until they arrested her, one week later.
Mary Wilder, a friend of the defendant, testified that she saw Mary *1025 Graham at 10:00 A.M. on February 17, and that she noticed marks on her neck, underneath her eye and on her knee and left arm. She said the defendant told her that a man had tried to seduce her.
 1, 2 Voluntary manslaughter, which is a lesser-included offense in a charge of murder, may involve either of two situations: one, where a person kills another without lawful justification, but where at the time of the killing he was acting under a sudden and intense passion resulting from serious provocation by the person killed; the other, where a person intentionally kills another, but at the time of the killing believes the circumstances to be such that if they existed, his conduct would be justified under the law of self-defense, and his belief is unreasonable. (Ill. Rev. Stat. 1969, ch. 38, par. 9-2.) The record reveals that the jury was properly instructed as to both theories of voluntary manslaughter and as to the question of the reasonableness of defendant's belief in the need for deadly force.
 3, 4 The defendant contends that she was not proven guilty beyond a reasonable doubt. She does not dispute that she fired the gun which killed Thortsen, but contends that the killing was justified as an act of ultimate self-preservation. Where a defendant introduces evidence which raises the issue of self-defense, the State has the burden of proving beyond a reasonable doubt that the act was criminal. (Ill. Rev. Stat. 1969, ch. 38, pars. 3-2, 7-14.) "[o]nce the affirmative defense is interposed, by the introduction of `some evidence' (sec. 3-2(a)) by either the State or the defense, the burden of proving guilt beyond a reasonable doubt as to that issue, as well as all other necessary elements of the offense, is placed upon the State." (People v. Warren, 33 Ill.2d 168, 173, 210 N.E.2d 507.) But even in the absence of directly contradictory evidence, the jury is not compelled to accept the defendant's exculpatory statements as conclusive, and may consider the surrounding circumstances and the probability or improbability of her testimony. (People v. Warren, 33 Ill.2d 168, 210 N.E.2d 507; People v. Wiggins, 12 Ill.2d 418, 147 N.E.2d 80.) "The issue of self-defense is always a question of fact for a jury under proper instruction, and such decision will not be disturbed unless the evidence is so unreasonable, improbable or unsatisfactory as to suggest a reasonable doubt." People v. Watts, 101 Ill. App.2d 36, 44, 241 N.E.2d 463, 467.
 5 In the instant case, the jury chose to disbelieve the exculpatory statements of the defendant and found that she did not entertain a reasonable belief in the need to use deadly force to protect herself. We believe that the evidence was sufficient to justify the jury's verdict. Rodney Thortsen testified that when he asked defendant what had happened, she merely told him his brother had fallen. The jury also had *1026 evidence before it which disclosed that the "good samaritan" failed to stay in the apartment, failed to seek medical assistance for the deceased, failed to report the incident to the police, and threw her gun into the lake. From our examination of the record, we cannot say that the jury's verdict was so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to defendant's guilt.
Defendant also contends that the prosecutor's inflammatory remark in closing argument denied her a fair trial. The prosecutor stated to the jury, "They arrive at 5045 N. Kenmore, and she goes up to his apartment, and he is pretty well smashed, and, actually, she has had a few drinks too. But once inside I think it only reasonable and logical to conclude the purpose of going up there concerned sexual acts. This does happen. We all know it." The defendant argues that the prosecutor's inference that she accompanied decedent to his home for the purpose of engaging in sexual acts was without basis in fact or probative value and was so inherently prejudicial that it violated defendant's right to a fair trial.
 6, 7 We note from the record that the defense attorney did not object to the comment by the prosecutor. It is, of course, well settled that questions not brought to the attention of the trial judge may not be raised for the first time in a court of review. (People v. Hampton, 44 Ill.2d 41, 253 N.E.2d 385.) We do, however, believe that the remarks of the prosecutor were a fair inference based on the facts and circumstances in the record and were not so inflammatory or prejudicial as to constitute reversible error.
For the reasons stated, the judgment of the circuit court is affirmed.
Judgment affirmed.
ADESKO, P.J., and DIERINGER, J., concur.