THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JEROME JOHNSON, Defendant-Appellant.

First District (3rd Division)    No. 62543

Opinion filed September 7, 1976.

.. no

James R. Streicker and Ira A. Moltz, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and William J. Stacy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Jerome Johnson, was charged with two counts of armed robbery. A jury in the circuit court of Cook County found him guilty of both counts of that crime, and he was sentenced to serve six to 18 years, the sentences to run concurrently. After the sentences for armed robbery were imposed, defendant entered a plea of guilty to the crime of bail jumping and was sentenced to one to three years to run concurrently with the other sentences. Defendant appeals only the armed robbery convictions, contending that he was not proved guilty beyond a reasonable doubt as to the affirmative defense of compulsion; that the court committed reversible error in allowing certain testimony of a State's witness and in allowing defendant to be cross-examined regarding his earlier failure to claim the defense of compulsion at the police station; that the court improperly permitted defendant to be impeached by references to a juvenile arrest; that he was denied a fair trial as a result of improper remarks by the prosecutor during closing argument; and that the sentences imposed were excessive and should be reduced.

On June 1, 1973, John Lister and Claudia Bader were robbed in a public park in the City of Chicago by two persons, one of whom was carrying a loaded gun. Defendant at trial admitted that he participated in the

robbery, but stated that he did so under threat of death from his associate, Larry Woods. Woods, a juvenile and not involved in this appeal, had entered an admission to the charge in juvenile court and had been placed on probation.

Both victims testified that Woods held a gun to Lister's head while defendant went through his pockets and removed his wallet, keys, $50 in traveler's checks, and $4 in cash. Defendant also took Lister's wristwatch from his person. Defendant asked Miss Bader if she had any money. She gave him $1.25 and answered affirmatively when defendant asked her if that was all the money she had. Both Lister and Miss Bader testified that Woods never issued any orders to defendant, and that neither robber talked to each other during the entire course of the occurrence. After taking the money from Miss Bader, defendant directed the victims towards another area, telling them to lie down. When Lister hesitated, Woods threatened to kill him. Miss Bader then started to scream and ran. Lister testified that both robbers said, "Let's split," and they began running through the park. Miss Bader testified that she heard only one of the robbers call out. Miss Bader told three men in the park what had happened and, joined by Lister, the three men began chasing the robbers.

Kenneth Thomas, a security guard, testified that at about 9:30 p.m. he heard persons running through an adjacent parking lot. He saw two men attempt to climb a ten-foot fence. Thomas pulled defendant and Woods from the fence, and searched and held them. In response to a question from Thomas, defendant stated that they were taking a shortcut and that it was the easiest way to get to their destination, a party on 47th Street. Four men, including Lister, arrived on the scene. Shortly thereafter, police officers, summoned by Miss Bader, arrived and arrested defendant and Woods.

Defendant and Woods both testified that Woods forced defendant at gun point to take part in the robbery while both of them were high on barbiturates. The pair had known each other about six months. They had been eating in a hotel coffee shop. When they came out of the coffee shop, Woods said he needed money and was going to commit a robbery. Defendant said that he did not want to do it. Woods drew a gun and told defendant he would kill him if he did not go along. Defendant stated that he did not know what Woods would do if he refused to participate.

■■ Defendant's initial contention is that he was not proved guilty of armed robbery beyond a reasonable doubt in that he was compelled to participate in the robberies under fear of death or great bodily harm. (Ill. Rev. Stat. 1973, ch. 38, par. 7—11.) Compulsion is an affirmative defense (Ill. Rev. Stat. 1973, ch. 38, par. 7—14), and once properly raised by some evidence by the defense, the State must overcome it by proof beyond a reasonable doubt to sustain a conviction. (Ill. Rev. Stat. 1973, ch. 38, par.

3—2.) Since the testimony of defendant and Woods as to compulsion was sufficient to raise the defense, the State had to prove beyond a reasonable doubt that defendant had not been compelled to act as he did.

The issue of compulsion was a question of fact to be determined by the jury. The jury determines the credibility of witnesses and weighs their testimony. That determination is a matter peculiarly for the triers of fact and it is not for a reviewing court to substitute its opinion. (*People v. Woods* (1963), 26 Ill. 2d 582, 187 N.E.2d 692.) As a result, this court will not set aside such a finding unless the proof is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt. *People v. Graham* (1971), 2 Ill. App. 3d 1022, 279 N.E.2d 41.

■■ In the present case, defendant concedes that the jury was instructed correctly regarding the law relating to compulsion. In our view, the record discloses ample evidence justifying the jury's rejection of the defense of compulsion. Both victims stated that neither robber talked to the other, and that Woods issued no orders to defendant. Nevertheless, defendant rifled through Lister's pockets and removed all his valuables. He also took Lister's wristwatch. Without prompting, defendant then asked Miss Bader if she had money. When she gave him the money, he ascertained that she had given him all she had. Moreover, it was defendant who, after taking the money and valuables, instructed the victims to move to another area of the park and to lie down. Finally, when apprehended by the security guard, defendant did not state that he was acting under coercion but stated that Woods and he were taking a shortcut to a party. The State met its burden of proving beyond a reasonable doubt that defendant was not compelled to commit the robberies, and defendant was proved guilty beyond a reasonable doubt.

Defendant next contends that the trial court committed reversible error in allowing testimony from a State's witness and in the cross-examination of defendant concerning the latter's failure to claim the defense of compulsion at the police station.

During cross-examination, defendant admitted that he had not informed the victims nor the security guard that Woods was compelling him to participate in the robberies. However, in response to a question as to whether he had told the security guard about the compulsion, defendant volunteered the information that he told one of the police officers at the station that Woods had forced him to commit the crimes. Defendant did not know which police officer he had so informed. On rebuttal, Officer Esau Wilkins testified for the State that he was assigned to investigate the crime in question. He had a conversation with defendant, and the latter never stated that he acted under compulsion of Woods. To Officer Wilkins' knowledge, defendant never made the statement to any other police officer. Defendant offered no objection to

198

the cross-examination in question or to the rebuttal testimony of the police officer.

■■ A defendant has the right to remain silent in the face of police interrogation and it is error for the State to offer testimony as to defendant's refusal to make a statement. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. More recently, it has been held that the use of a defendant's silence for impeachment purposes after he received the Miranda warnings is violative of due process. (*Doyle v. Ohio* (1976), ___ U.S. ___, 49 L. Ed. 2d 91, 96 S. Ct. 2240; see *People v. Monaghan* (1976), 40 Ill. App. 3d 322.) However, in a footnote in *Doyle,* the court stated as follows:

> "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. Cf. United States v. Fairchild, 505 F.2d 1378, 1383 (CA5 1975)." (___ U.S. ___, ___, 49 L. Ed. 2d 91, 99, 96 S. Ct. 2240, 2245.)

Similarly, in the present case, defendant was not being impeached by his silence, but rather his testimony as to his behavior following his arrest was being challenged. Under *Doyle* and *Fairchild,* that challenge by the State is permissible. We would also note that, unlike *Doyle,* no timely objection was made by the defense in the instant case either to the cross-examination of the defendant or to the rebuttal testimony of the police officer. We believe that it was error on the part of the prosecutor to inquire of Officer Wilkins regarding conversations defendant may have had with other police officers concerning compulsion. However, under the circumstances, the error was harmless.

■■ Defendant also contends that the trial court improperly permitted defendant to be cross-examined regarding his arrest for a juvenile violation.

On direct examination, defense counsel asked defendant if he had ever been arrested for a robbery before. Upon receiving a negative reply, counsel asked defendant if he "had ever been arrested for anything, a felony, misdemeanor before that point." Defendant responded that he had not. On cross-examination, defendant admitted that he had been arrested before and brought to juvenile court. Defense counsel objected on the grounds that the direct examination related to convictions, not to arrests. The trial court correctly overruled the objection, pointing out that the direct examination concerned itself with arrests. The cross-examination was proper.

■■ Defendant also complains of prejudicial remarks made by the assistant State's Attorney during closing argument. Defendant did not object to these comments in the trial court, and we deem the irregularities now complained of to have been waived. (*People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227.) Although prejudicial arguments made without objection of counsel will be considered by a reviewing court if as a result thereof defendant cannot receive a fair trial (*People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26), we do not consider the four isolated comments of the prosecutor in the present case to fall within that rule.

■■ Defendant finally maintains that the concurrent sentences of six to 18 years are excessive, and should be reduced. In so urging, he points out he is only 18 years of age and has no previous criminal record.

These robberies were particularly vicious. A loaded gun was involved. At the conclusion of the occurrence, defendant directed the victims to a more secluded area in the park and ordered them to lie down. When one of the victims hesitated, defendant's accomplice threatened to kill him. The courageous conduct of Miss Bader may have prevented even more serious consequences. The minimum sentence for armed robbery is four years. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) We do not believe that the trial court abused its discretion in imposing concurrent sentences of six to 18 years.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MEJDA, P. J., and DEMPSEY, J., concur.