THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR WALDEN, Defendant-Appellant.

First District (3rd Division)   No. 62647

Opinion filed November 4, 1976.

George C. Howard, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Joel M. Goldstein, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:
Following a bench trial, defendant, Arthur Walden, was found guilty of

murder and sentenced to serve 15 to 30 years in the penitentiary. Defendant appeals and presents four issues: (1) whether the evidence was sufficient to sustain a murder conviction over defendant's claim of self-defense; (2) whether an alleged statement by defendant to police should have been allowed as substantive evidence when there was no corroboration and the defendant under oath denied making any statement; (3) whether the trial court erred in denying the defense motion to suppress the statement; and (4) whether guilt was manslaughter at the very most. We affirm. The pertinent evidence follows.

On April 28, 1973, Lynn Taylor was shot and killed by defendant. There has never been any denial that he killed the deceased, his claim being that the homicide was a justifiable act of self-defense. Defendant was the only eyewitness to testify to the actual shooting; the only other eyewitness died the same day in a separate incident.

Dorothy Latham testified that she was defendant's common-law wife and had lived with him for 11 years. She owned two cars, a 1965 Mercury and a 1965 Pontiac. During the evening of April 28, 1973, she observed a man getting into the Pontiac. When she went out and spoke to him he followed her into her apartment, made a telephone call, then left. About 15 minutes later, defendant came to the apartment with another man and a woman. He told Dorothy Latham he wanted the Pontiac; she told him he could not have it but that she would drive him where he wanted to go. They left in the Pontiac, and the other couple followed in Taylor's car. Dorothy Latham dropped defendant off at 66th Street and Cottage Grove, parked the car, then went into a barber shop where she remained for 10 or 15 minutes. Someone told her that defendant wanted to see her outside, and she went out and saw defendant holding his hand which was bleeding. He said he had shot Lynn and asked to be taken to the hospital. On the way there she saw him put a gun under the car seat. She identified the gun as belonging to defendant. She testified that when she asked him what happened to his hand defendant said his gun "backfired." At the hospital she gave police permission to search her car.

On cross-examination the witness testified that defendant also told her that Taylor had hit him over the head with a chair, but she could not recall if he told her he had been shot while backing up. Defendant told her his gun had "misfired." She remembered that Taylor and defendant had had an argument in a bar about two months before, but could not recall the details except that she had not at that time seen anything in Lynn Taylor's hands.

Georgia Walls testified. On April 28, 1973, she was in the R & T Movers and Furniture Store at 6552 Cottage Grove, together with defendant, Lynn Taylor, Joe Ellis, the owner of the store, and Mr. Ellis' secretary. Joe Ellis was the only other eyewitness to the actual shooting, but he was

killed later that day in an unrelated incident. The witness remained about 15 minutes, then left with defendant and another man to "get something for Lynn" from defendant's house, but she did not know what it was. Defendant went into his house and about five minutes later left with his wife in the Pontiac. Georgia Walls followed, and while parking her car in front of the store she heard shots. As she ran in, defendant walked out of the store with a gun in his hand and he was bleeding. She saw deceased lying on the floor but saw no weapons. She identified a series of photographs as fairly and accurately depicting the premises at the time of the incident.

Officer Ronnie Watson testified. On the night of the incident he went to the Billings Hospital emergency room where he talked with Dorothy Latham. He then went to her car and recovered a gun from under the front seat. At the time, the gun contained five expended shells and one live one. The live shell had apparently been struck by the firing pin but failed to go off, as evidenced by the markings on the back.

Defendant testified in his own defense. While shooting dice with Taylor and Ellis in the store, he borrowed $50 from Taylor and pawned his wife's Mercury to him. A $200 bet was made between them, and as the game continued defendant accused Taylor of cheating, whereupon Taylor hit him and a scuffle ensued. Taylor insisted defendant owed him $50 and that he had to pawn his wife's other car to cover the debt. He took a key from defendant and gave it to a man and a woman to get the 1965 Pontiac. They returned without the car because they had the wrong key. Defendant then asked Taylor to let him talk Dorothy Latham into giving him the car. When he went to talk with her she refused to give him the car but did drive him back to the store. After he returned and told Taylor he could not get the car, Taylor jumped up and hit him with a chair, knocking him down. As defendant got up, Taylor fired a gun at him. Defendant's hand was wounded when he held it up as protection. The shot knocked him down again and he then drew his own gun. The first shot misfired but he continued firing and killed Taylor. After the shooting he left the store and had Dorothy Latham drive him to the hospital. He told her he "shot Lynn," but could not recall telling her his gun had "backfired." He testified that his gun misfired and did not backfire. Defendant further testified that he alllowed Taylor to treat him as he did because he had fought with him over a pool game in a bar a month or two earlier. At that time Taylor had pulled a gun on him, had taken his money, and made him "kiss his shoe."

On cross-examination defendant testified that as he was backing away, Taylor shot him in the hand; that Taylor fired only the one shot; and that defendant did not pull his gun until he was knocked down for the second time by the shot. He was carrying his gun in his waistband. He recalled

waking up at the police station after passing out at the hospital, but denied making any statement to the police.

Officer Edward Czekala testified in rebuttal for the State. On April 28, 1973, he had a conversation with defendant at homicide headquarters and read the *Miranda* warnings from a card. Defendant indicated that he understood each of these rights. Officer Czekala then asked if defendant wanted to tell him what happened in the store. At that point defense counsel objected and made a motion to suppress the statement, based on lack of adequate waiver. The trial court overruled the objection at the time but specified that defendant could later present further evidence on the motion. Officer Czekala then related his conversation with defendant. Defendant said he shot Taylor while the latter was sitting at a table in the store. He first fired while Taylor was seated, then as he started toward him defendant pulled the gun back to his side, near his belt. He put his left hand out to ward off Taylor and continued firing. He indicated it was then that he had "probably shot himself in the hand." Officer Czekala called for a court reporter to take a written statement, but defendant said he was not feeling well and did not wish to give a statement at that time. The officer made arrangements to transport defendant to the hospital for further treatment of his injury. At no time during their conversation did defendant indicate he had been hit with a chair, nor did he say that deceased had been shooting at him.

On cross-examination Officer Czekala testified that he investigated the scene of the shooting. During a conversation with Joe Ellis he learned that the deceased was his brother-in-law. He did not search Ellis. His examination of defendant's gun showed no evidence of its having backfired. Upon further questioning by the court, Officer Czekala testified that his conversation with defendant was brief and that defendant appeared to be in great pain due to his injury.

Defendant was recalled as a rebuttal witness in his own defense. He testified that he passed out while at Billings Hospital, and when he came to, he was in a wheelchair. He was taken to the police station and handcuffed to the wall. He denied making any statement to police. After he was excused the court denied defendant's motion to suppress the out-of-court statement.

■■ Defendant initially contends that the evidence was insufficient to sustain a murder conviction over his claim of self-defense. He argues that he was the only eyewitness to testify, that his testimony showed deceased to have been the aggressor at all times, and that the only contradictory testimony was his alleged out-of-court statement as to how he was shot, which he denied in court under oath.

Once some evidence of self-defense is raised, the burden devolves upon the State to prove beyond a reasonable doubt that defendant's

actions were not justified by self-defense. (*People v. St. Pierre* (1975), 25 Ill. App. 3d 644, 324 N.E.2d 226; *People v. Graham* (1971), 2 Ill. App. 3d 1022, 279 N.E.2d 41.) The burden of proof never shifts to the defendant. *People v. Durand* (1923), 307 Ill. 611, 139 N.E. 78; *People v. Halley* (1973), 13 Ill. App. 3d 719, 300 N.E.2d 645.

In challenging the trial court's determination in the instant case that the State met its burden of proof, defendant emphasizes that his was the only eyewitness testimony presented at trial. The determination of whether a killing is justified under the law of self-defense is a question of fact (*People v. Muldrow* (1975), 30 Ill. App. 3d 209, 332 N.E.2d 664; *People v. Collins* (1972), 9 Ill. App. 3d 467, 292 N.E.2d 441), and when a defendant submits the only version of what occurred, the trier of fact may not disregard the account if the testimony is not improbable, uncorroborated, nor uncontradicted in its material parts (*People v. Jordan* (1954), 4 Ill. 2d 155, 122 N.E.2d 209). However, the trier of fact need not accept as true a defendant's account of the incident but rather, in weighing such evidence, it must consider the probability or improbability of the testimony, the circumstances surrounding the killing, and the testimony of other witnesses. *People v. Holtz* (1974), 19 Ill. App. 3d 781, 313 N.E.2d 234; *People v. Kendricks* (1972), 4 Ill. App. 3d 1029, 283 N.E.2d 273.

In a bench trial the trial court's determination concerning the weight and credibility to be afforded the testimony of any witness will not be disturbed on review unless palpably erroneous. *People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; *People v. Guido* (1962), 25 Ill. 2d 204, 184 N.E.2d 858; *People v. Nichols* (1975), 32 Ill. App. 3d 265, 336 N.E.2d 194.

Defendant testified that when he returned to the store without the Pontiac automobile, deceased attacked him, first knocking him down with a chair, then shooting him in the hand. It must be noted that his claim that he was hit over the head with a chair was substantially contradicted. The only supportive evidence was Dorothy Latham's statement that defendant told her he had been hit with a chair. However, there was no evidence that defendant sustained any injury to the head or that he was treated for such injury, even though the blow allegedly knocked him to the floor. In addition, the photographs entered into evidence show no signs of any displaced furniture although Georgia Walls testified that they accurately depicted the premises as she saw them after the incident.

The first time defendant alleged that deceased had shot him was at the trial itself. He made no previous mention of it either to his wife when she inquired about his wound, or to Officer Czekala when he made his oral statement concerning the incident. Indeed, this was the third version defendant had given concerning the manner in which he had been wounded; he told his wife his gun misfired or backfired; he told Officer Czekala he had shot himself; and finally, at trial he testified that deceased shot him.

Additionally, no other weapon was found at the scene. Defendant's speculation that someone removed the gun is not borne out by any testimony or evidence. Georgia Walls entered the store within seconds of the incident and saw no weapon near the deceased. Defendant's alternative claim that Illinois case law holds that deceased need not have been armed with a weapon for defendant to claim self-defense is correct but inapplicable. If deceased in the instant case was not armed, then defendant's testimony would stand impeached. The version would be patently false, and there would be no basis for a claim of self-defense.

■■ Next, defendant's statement to Officer Czekala directly contradicts his testimony in court. He told the officer that he entered the store and shot deceased who was then seated in a chair, and that after deceased started toward him defendant shot himself in the hand while simultaneously firing and warding off the deceased. During trial, defendant testified that when he entered, deceased rose from his chair, knocked defendant down by hitting him over the head with a chair, then shot defendant in the hand, whereupon defendant drew his own gun and killed him. The inconsistencies are glaring. Although the statement in court was made under oath it is not rendered more credible than the statement made out of court.

Furthermore, defendant's testimony appears improbable and unbelievable in human experience. It is difficult to imagine that one who allegedly is the aggressor and has fired a shot at another will suddenly become passive and allow his victim to draw a gun, misfire once, then fire five more times at him without the alleged aggressor attempting to again fire his own weapon. The evidence establishes that the trial court did not err in rejecting defendant's claim of self-defense.

■■■ Defendant next contends that his alleged statement to Officer Czekala could not be used to show his guilt because it amounted to an uncorroborated confession. We find no merit in this contention. The rule that a confession must be corroborated by independent evidence of the *corpus delicti* of the crime is well satisfied in this case.

It is well settled that the voluntary confession of an accused is insufficient, without corroborating evidence, to authorize a conviction. (*People v. Perfecto* (1962), 26 Ill. 2d 228, 186 N.E.2d 258; *People v. O'Neil* (1960), 18 Ill. 2d 461, 165 N.E.2d 319; *Bergen v. People* (1856), 17 Ill. 426.) However, it is enough if the other evidence tends to show that a crime did in fact occur, or tends to corroborate the confession. (*People v. Norcutt* (1970), 44 Ill. 2d 256, 255 N.E.2d 442.) The corroborating evidence standing alone need not be sufficient to support a conviction. (*People v. Redden* (1973), 10 Ill. App. 3d 889, 295 N.E.2d 23; *People v. Cunningham* (1970), 122 Ill. App. 2d 222, 258 N.E.2d 145.) Neither is it necessary to

establish the *corpus delicti* by evidence completely independent of that which tends to connect the accused with the crime. If there is corroborating evidence which might confirm the circumstances related in the confession, both may be considered in determining whether the *corpus delicti* is sufficiently proved. *People v. Melquist* (1962), 26 Ill. 2d 22, 185 N.E.2d 825, *cert. denied*, 372 U.S. 967 (1963); *People v. O'Neil* (1960), 18 Ill. 2d 461, 165 N.E.2d 319.

The evidence in the instant case sufficiently satisfies the requirements of the corroboration rule. Not only is there independent evidence of the commission of a crime by some person, but there is independent evidence to establish that defendant was guilty of the crime, and that it was not a matter of self-defense. The testimony of Georgia Walls and Dorothy Latham, the photographs entered into evidence, and the fact that no other weapon was found or observed at the scene, all tend to establish a nexus between defendant and the crime. Perhaps alone, but certainly when combined with defendant's own statement of Officer Czekala, this evidence constitutes both proof of the *corpus delicti* and proof of defendant's guilt beyond a reasonable doubt.

Defendant additionally contends that the trial court erred in denying the defense motion to suppress the statement allegedly made to the police. Defendant denied making any statement to the police but argued "Be that as it may, there is no question but that the Defendant was in no condition to waive any rights that he had to remain silent, etc."

Evidence was introduced that defendant was advised of his constitutional rights in accordance with *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and that defendant made a statement as to the incident to Officer Czekala after receiving the warnings. However, defendant claims that waiver was inadequate due to the great pain he was suffering from his injury.

The test for voluntariness is whether defendant's will was overborne at the time he confessed. (*Lynumn v. Illinois* (1963), 372 U.S. 528, 9 L. Ed. 2d 922, 83 S. Ct. 917.) The court must look to the totality of the circumstances in determining voluntariness. (*In re Lamb* (1975), 61 Ill. 2d 383, 336 N.E.2d 753, *cert. denied*, ___ U.S. ___, 48 L. Ed. 2d 180, 96 S. Ct. 1672 (1976); *People v. Johnson* (1970), 44 Ill. 2d 463, 256 N.E.2d 343, *cert. denied*, 400 U.S. 958.) While the pain incurred from defendant's wound is one factor to be considered, it is not an overriding one. It is the State's burden to establish the voluntariness of a confession by the preponderance of the evidence, but once the State has made out a *prima facie* case of voluntariness the burden of going forward and showing some evidence of involuntariness is on the defendant, upon which showing the burden of proof will shift back to the State. *People v. King* (1962), 24 Ill. 2d 409, 182 N.E.2d 194, *cert. denied*, 371 U.S. 870; *People v.*

*West* (1975), 25 Ill. App. 3d 827, 322 N.E.2d 587; *People v. Smith* (1966), 71 Ill. App. 2d 446, 219 N.E.2d 82, *cert. denied*, 386 U.S. 910 (1967).

■■■ The circumstances in evidence surrounding defendant's statement established *prima facie* proof of voluntariness. Not only was he fully advised of his rights, but the police acceded immediately to his desire to end the questioning, and transported him to the hospital for possible further treatment of his injury. Defendant, however, has not met his burden of going forward with proof of involuntariness. The mere existence of pain is not sufficient to render a defendant's statement involuntary. There is no evidence that the pain suffered by defendant was of such nature as to overcome his ability to understand either Officer Czekala's warnings or the implications of his statement to the officer. His will was not overborne. Absent such evidence, the trial court's determination as to the voluntary nature of defendant's confession cannot be said to be contrary to the manifest weight of the evidence, and thus will not be disturbed on review. *People v. Pittman* (1973), 55 Ill. 2d 39, 302 N.E.2d 7; *People v. White* (1974), 22 Ill. App. 3d 180, 317 N.E.2d 323, *aff'd*, 61 Ill. 2d 288, 335 N.E.2d 457 (1975), *cert. denied*, ___ U.S. ___, 47 L. Ed. 2d 738, 96 S. Ct. 1469 (1976).

■■■ Defendant's final contention is that he is not guilty of anything, but at most, nothing more than manslaughter. He argues that it should be apparent that there was no malice, hatred nor ill will on his part.

Under section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1) the elements of murder are the knowing, intentional and unlawful taking of another's life (*People v. Clemens* (1972), 9 Ill. App. 3d 312, 292 N.E.2d 232). To justify a conviction of murder, it is not necessary to show that the accused deliberately formed the intent to kill, but it is sufficient to imply intent to murder by showing that he voluntarily and willfully committed an act, the direct and natural tendency of which was to destroy another's life. (*People v. Davis* (1966), 35 Ill. 2d 55, 219 N.E.2d 468; *People v. Boisvert* (1975), 27 Ill. App. 3d 35, 325 N.E.2d 644.) In response to defendant's instant argument, it hardly need be pointed out that hostility or animosity is not an essential element of murder. (*People v. Forrest* (1971), 133 Ill. App. 2d 70, 272 N.E.2d 813.) However, while malice is an essential element of murder, it may be expressed or implied (*People v. Dampher* (1963), 28 Ill. 2d 136, 190 N.E.2d 705; *People v. Muldrow* (1975), 30 Ill. App. 3d 209, 332 N.E.2d 664), and it will be implied where the acts of the defendant exhibit a wanton and reckless disregard for human life (*People v. Dampher; People v. Forrest* (1971), 133 Ill. App. 2d 70, 272 N.E.2d 813; *People v. Brooks* (1964), 52 Ill. App. 2d 473, 202 N.E.2d 265). We are satisfied that the facts of this case are sufficient to establish malice on the part of defendant in that his unprovoked actions exhibit a clear disregard for human life.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.