THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARTY COLONE, Defendant-Appellant.

First District (1st Division)   No. 77-962

Opinion filed January 9, 1978.—Rehearing denied February 8, 1978.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

. Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Suzanne Philbrick, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After trial by jury, Marty Colone (defendant) was found guilty of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2), and sentenced to 8 to 20 years. He appeals, raising the defense of compulsion and charging his sentence to be excessive.

The State's evidence shows that on the morning of December 2, 1973, the complaining witness and her granddaughter were alone in the home they occupied. A person identified as the defendant rang the doorbell and asked the complainant if she would be interested in buying Christmas cards for poor people. The complainant refused and the man left. About a half hour later the doorbell rang again. The granddaughter went to the door. Several armed men entered the home. The complaining witness took some money and purses from a drawer and gave them to the men. She also gave them several rings, a fur coat and a fur stole. She did this after guns were held to her head and she was threatened. The men wore ski masks. Defendant did not enter the home with the group.

Police identified the furs and jewelry, which were found in a nearby home occupied by Dennis Young and his mother. The police ascertained that defendant had been present in Mrs. Young's home on the day of the robbery. The officers went to the school which defendant attended. When they identified themselves, he told them that he was "a victim of circumstances" and that he wanted to cooperate.

Defendant gave the police a written statement. Defendant stated therein that he went to the Young's home to be with his girlfriend who lived there. Dennis Young and three other young men came to the home and spoke about a plan for a home invasion next morning. This was done in defendant's presence. Defendant then left the room and was with his girlfriend until the following morning.

Defendant also stated that next morning the four young men requested that defendant go to the home of the complaining witness and find out who was there. Defendant saw that the men had masks and guns. They had been drinking and using a drug of some kind and they called him a sissy. At the request of the men, defendant went to the home and asked the grandmother about buying Christmas cards. He then returned to the Young's home and told the group of men that he had seen only the little girl and the grandmother.

The group then left wearing ski masks and carrying their weapons. Defendant remained in the house with his girlfriend. He was reading a newspaper when he saw a lady come running out of the house. Shortly thereafter the group of young men returned and went down to the basement of the Young's house. Defendant was with them and saw about $300 in cash, two fur coats, the jewelry, the ski masks and the guns. The young men left the Young's house by taxicab. Defendant left sometime later but returned the next day to pick up his sister. At that time he told Mrs. Young everything he knew.

Defendant testified that he was 17 years old at the time of the alleged crime. He was studying psychology and business management at Daniel Hill Williams University. He went to the Young's house to see his girlfriend on the evening before the robbery. He heard the group of young men planning a robbery for the next day. He was in the room with them for 3 or 4 minutes. He then left and stayed with his girlfriend.

Next morning, a fifth young man whom defendant knew only as "Jade," came to the house. He had two pistols and some "ice." Jade pointed a gun at defendant and told him that he looked like a "creep." Keeping the gun in position, Jade told defendant to go to the home of the complaining witness and ring the bell. Defendant testified that he was scared but that he did as he was told. The grandmother answered the door and he asked if she wished to buy some Christmas cards. She refused. Defendant returned to Young's house and told the group of boys that he saw only a little girl and a lady. Defendant testified that he had heard that Jade had the reputation of being a killer and that he acted in fear of his life. He felt that if he ran away they might shoot at him or "get me some other time."

The group then left for the grandmother's home. They returned to the Young residence where they divided the loot. Defendant had never previously talked to Jade before that day; Jade had never threatened him before and he had never seen Jade threaten, hit or shoot anyone. Defendant remained at the Young's house until after the robbers left. He told his girlfriend, his mother and Mrs. Young what had happened before he spoke to the police.

The defense of compulsion is governed by statute. Defendant should

be found not guilty of armed robbery if he had assisted in the commission of the crime "under the compulsion of threat or menace of the imminent infliction of death or great bodily harm" and then only if he reasonably believed that "death or great bodily harm" would be inflicted upon him if he did not participate in the crime. (Ill. Rev. Stat. 1975, ch. 38, par. 7—11(a).) In Illinois, compulsion is an affirmative defense. (Ill. Rev. Stat. 1975, ch. 38, par. 7—14.) When compulsion has been raised by the defense and some evidence introduced to support it, the State has the burden of overcoming this defense by proof beyond a reasonable doubt. Ill. Rev. Stat. 1975, ch. 38, par. 3—2. See *People v. Johnson* (1976), 42 Ill. App. 3d 194, 196, 355 N.E.2d 577.

In our opinion, the evidence before us proves beyond reasonable doubt that the defendant may not avail himself of the defense of compulsion. The supreme court has pointed out the strong language of the statute in requiring a threat of "imminent infliction of death or great bodily harm" so that the defendant "reasonably believes death or great bodily harm will be inflicted upon him if he does not perform" the criminal act. (*People v. Ricker* (1970), 45 Ill. 2d 562, 569, 262 N.E.2d 456, quoting from Ill. Rev. Stat. 1967, ch. 38, par. 7—11(a).) We cannot find from defendant's testimony in open court, or from the statement which he gave the police, that he had a reasonable belief that he was in imminent danger of death or great bodily harm.

■■ It has been held that, "[a] threat of future injury is not sufficient to excuse criminal conduct." (*People v. Robinson* (1976), 41 Ill. App. 3d 526, 529, 354 N.E.2d 117, citing *People v. Davis* (1974), 16 Ill. App. 3d 846, 306 N.E.2d 897.) In addition, in the instant case, the defendant had a number of ample opportunities to withdraw from the criminal enterprise and failed to take steps in this direction. When defendant first entered the home which was to be the target of the invasion, he could have notified the people there of the pending plans for robbery. After defendant had returned to the Young's home and the group of men had left to execute the robbery, he could have notified the police with safety at any time. The failure of the defendant to avail himself of these opportunities, demonstrates the absence of compulsion. *People v. Moon* (1976), 38 Ill. App. 3d 854, 864-65, 350 N.E.2d 179, and cases there cited.

■■ As regards the sentence, defendant was 17 years old at the time of this offense. He was employed and apparently was attempting to continue his education. His only criminal record was a conviction for possession of marijuana resulting in probation for 1 year which was successfully completed. His guilt of armed robbery is necessarily predicated upon the legal theory of accountability. (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).) It is true, as the State urges, that a defendant found guilty on the theory of accountability shares equal guilt with the principal perpetrators of the

crime. (*People v. Kessler* (1974), 57 Ill. 2d 493, 498-99, 315 N.E.2d 29.) However, it does not follow that because two defendants are equally guilty of the offense that all must necessarily receive the same sentence.

■■ The criminal record of a defendant is always relevant in fixing a sentence. (*People v. Hart* (1971), 132 Ill. App. 2d 558, 563, 270 N.E.2d 102.) Similarly, the age of a defendant is a proper consideration in assessment of the proper penalty. (*People v. Cannon* (1971), 49 Ill. 2d 162, 167, 273 N.E.2d 829.) The degree of activity or participation in a crime should receive attention in fixing the sentence. (*People v. Morris* (1969), 43 Ill. 2d 124, 131, 251 N.E.2d 202.) The presence of all of these factors, particularly the absence of any substantial criminal offense in the defendant's background, convinces us that a reduction of the sentence here is proper within the guidelines expressed in *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.

Although we recognize that the trial court generally is in a better position than this court to make a sound determintion regarding punishment (*Perruquet*, 68 Ill. 2d 149, 154; *People v. Sprinkle* (1974), 56 Ill. 2d 257, 264, 307 N.E.2d 161, *cert. denied* (1974), 417 U.S. 935, 41 L. Ed. 2d 239, 94 S. Ct. 2650), we conclude that the record before us presents a situation in which the minimum sentence should be imposed. The sentence is accordingly reduced to a minimum of 4 years and a maximum of 4 years and 1 day. As thus modified, the judgment is affirmed.

Judgment affirmed as modified.

McGLOON and O'CONNOR, JJ., concur.